PEOPLE v. KENNEDY.

1. CRIMINAL LAW—CONSTITUTIONAL LAW—CONFRONTATION OF WIT-
   NESSES—HEARSAY.
   Constitutional right of person accused of maliciously threatening
   injury to property of operator of dry-cleaning establishment to
   be confronted by witnesses against him renders incompetent
   and prejudicial as showing incendiary character of fires hear-
   say evidence that garments presented were burned in the es-
   tablishment, where clerks who had made out and attached
   identification tags were not produced although available (Const.
   of 1908, art. 2, § 19).

2. SAME—ORDER OF PROOF.
   Order of proof in trial of criminal case lends itself somewhat to
   the discretion of the court.

3. SAME—INDORSEMENT OF NAMES ON INFORMATION.
   Failure to perform mere act of indorsing name of witness on in-
   formation does not alone constitute reversible error where
   record shows testimony is purely rebuttal and discloses reasons
   which would justify indorsement.

4. SAME—REBUTTAL TESTIMONY—DENIAL OF CONTINUANCE—REVER-
   SIBLE ERROR.
   Reception of testimony of people's witnesses offered on rebuttal
   as impeaching testimony without indorsing names of witnesses
   on information and denial of continuance constituted reversible
   error where said testimony was part of people's main case and
   it is apparent its precise character was known before defense
   was commenced.

5. SAME—ADMISSION OF NEGATIVE SPECULATIVE TESTIMONY.
   Admission of testimony in trial of one charged with maliciously
   threatening injury to property of prosecuting witness that fires
   ceased after defendant's arrest held, inadmissible as speculative
   and without probative inference.

6. SAME—SELF-SERVING STATEMENTS.
   Proffer by defendant of evidence of threats against prosecuting
   witness made over telephone to defendant held, self-serving,
   incompetent and properly rejected, where defendant denied
   making threat charged.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 12, 1934. (Docket No. 152, Calendar No. 37,549.) Decided June 4, 1934.

Nicholas J. Kennedy was convicted of maliciously threatening injury to property. Reversed, and new trial ordered.

*Edward N. Barnard,* for appellant.

*Patrick H. O'Brien,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *William G. Buckingham* and *Edmund E. Shepherd,* Assistants Prosecuting Attorney, for the people.

FEAD, J. In 1932 defendant Kennedy, Nawrot and others organized the Association of Cleaners and Dyers Employees and Retail Tailors in Detroit. The purpose was to raise wages. The first objective was to induce employers to increase their charges to the public.

Alva R. Davis conducts a cleaning establishment. On April 29, 1933, fires began to occur in his plant, in a machine called a tumbler, in which steam was used. May 12th defendant and Nawrot called on Davis and asked him to increase his cleaning prices. He refused to do so. Defendant asked him to consider the matter further. The fires continued, practically nightly, sometimes several in a night. On May 24th defendant and Nawrot again talked with Davis, the fires were mentioned, a quarrel ensued and it is claimed defendant said:

"Well, if you can't see things the way we do, your place is liable to fall down some of these nights instead of having a few fires."

Davis called the police, defendant and Nawrot were arrested and later were tried on the charge of maliciously threatening injury to Davis' property, with intent to compel him to do an act against his will, to-wit, to raise his dry-cleaning prices. Kennedy was convicted and Nawrot acquitted.

Not content to rest upon the ambiguous language of defendant's statement to Davis, the people developed a setting for it to indicate that it was a malicious threat. They claimed it was made in pursuance of a policy of the association to impose its will on employers by arson, bombing and other terrorist measures. They presented evidence of investigators who had attended meetings of the association, at which defendant was a leading spirit, and claimed statements to that effect were made by his associates in his presence.

It was the people's theory that the association sent persons to Davis' establishment, in the guise of customers, who left clothes for cleaning, in which were hidden chemicals which, united with steam in the tumbler, caused fire. They produced a chemist who, after conducting an experiment with clothes furnished by Davis, said metallic potassium would so operate and would produce a like burn. The experiment was not conducted under "similar conditions" but the court sustained all objections to the testimony properly made.

Clothes brought to the Davis plant by customers were received by girls who, with pen and ink, wrote the names and addresses of the owners on serially numbered tickets and pinned to the garments cloth tags bearing corresponding numbers. Book entries were also made of the transactions. On clothes brought in by collectors the numbers were stenciled.

Over objection, on testimony of Alva Davis, there were received in evidence a dress burned April 29th, when Davis was present, a burned suit found by Davis in the back yard the same night, and a coat and pair of trousers likewise found by him on May 19th. He had no personal knowledge of the burning of the suit, coat and trousers. Through the identification tags and tickets he identified the exhibits as garments received over the counter. The employees who attached the tags and wrote the tickets, although available, were not produced. The chemist made his experiment with cloth from the coat or trousers found on May 19th.

Darrell Davis, son of the proprietor, went to the addresses shown on the tickets to locate the customers and was told by occupants of the houses that they did not live there and were not known. The occupants were not produced. Darrell also testified that no return or value of the burned garments had been claimed.

It is conceded that nearly all of this testimony was hearsay, but a question is raised upon the sufficiency of the identification of the garments through the tags and tickets without production of the employees who made them.

We need not determine how far the rules regarding proof necessary to admit books of account and private records in evidence have been or should be modified, in civil cases, to conform to business practice. No modification is admissible which infringes the constitutional right of an accused to be confronted by the witnesses against him (Const. of 1908, art. 2, § 19). The testimony was incompetent. *People* v. *Dow,* 64 Mich. 717 (8 Am. St. Rep. 873); *People* v. *Nutter,* 255 Mich. 207. It was prejudicial

because it purported to show incendiary character of the fires at the Davis plant and was offered in furtherance of the people's theory that defendant's statement to Davis carried a threat of destruction of his property by the association. The testimony went to the heart of the issue and was reversible error.

On his direct examination, defendant denied making the alleged threat and denied that the association had an unlawful purpose or *modus operandi* or that he, or any member or employee of the association, to his knowledge, had destroyed property or threatened to destroy it. Thereupon the prosecution cross-examined him vigorously upon threats by himself and his associates to destroy property of one Reichel, another cleaning proprietor, and upon fires in Reichel's establishment. Defendant denied the threats and knowledge of the fires. On rebuttal, the people offered Reichel and his employee, Hanson, to impeach defendant. Their names were not indorsed on the information. The defense objected to the testimony for that reason and because the testimony was part of the people's main case and, if not, it was not proper rebuttal because directed to a collateral issue, and also asked for a continuance, which was denied.

At the outset, the people tied the general character and conduct of the association and defendant therein to the statement made by defendant to Davis, to prove a malicious threat. By their own theory, the people made all relevant activities of the association, and of defendant in connection therewith, part of their main case. However, the order of proof is not governed by hard and fast rules but lends itself somewhat to the discretion of the court. While there was little, if any, excuse for departure from the order of proof in this case, we prefer to

consider the testimony from a more serious viewpoint, failure to indorse the names on the information.

Failure to perform the mere manual act of writing a name on the information alone does not constitute reversible error where the record affirmatively shows that the testimony is purely rebuttal and discloses reasons which would justify the indorsement. *People* v. *Tamosaitis,* 244 Mich. 258. But in that case this court took occasion to emphasize the mandate of the statute that the names of witnesses for the people be indorsed on the information. And in *People* v. *Blue,* 255 Mich. 675, the practice and required showing were outlined. Omission to indorse is not lightly to be condoned.

It is apparent the people knew the precise character of the testimony Reichel and Hanson would give, before defendant was sworn. Under their theory, the testimony was part of their affirmative case. They offered no reason for failure to indorse except that they had a right to assume defendant would admit the claimed statements to Reichel and Hanson. The people cannot violate the law requiring indorsement of witnesses as soon as discovered on the hypothesis that a defendant who pleads not guilty and stands trial will admit his guilt on the stand. Although the controversy regarding indorsement was extended and the court expressed the opinion that the testimony would have been competent in chief, the people did not make a showing, nor ask, for indorsement. If such practice is approved, the people could hold for rebuttal, without indorsement, the names of all their witnesses except enough to make a *prima facie* case and thus defeat the statute (3 Comp. Laws 1929, § 17254). We hold it was reversible error to receive the testimony of

Reichel and Hanson without indorsement of the names and continuance.

Davis was permitted to testify over objection that no fires occurred on his establishment after defendant's arrest. When defendant was arrested, the offense charged, if any, was completed. The only purpose of such testimony could have been to indicate that defendant was responsible for the former fires. There was no claim that he personally caused any of them. The testimony was purely negative in character and we find no authority for its admission. Testimony of the reverse situation, namely, showing by defendant that fires continued after his arrest, has been held incompetent. *State* v. *Millican,* 158 N. C. 617 (74 S. E. 107). The testimony departs from the realm of probative inference and is speculative.

Defendant was not permitted to testify regarding threats against Davis, made to defendant over the telephone. If he had admitted the claimed statement to Davis and said he was merely relating to him threats which he had heard, the testimony might have been admissible. But, in view of his denial of the statement, the testimony was self-serving and not competent.

Judgment reversed, and new trial ordered.

Nelson Sharpe, C. J., and Potter, North, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred. Wiest, J., concurred in the result.