PEOPLE v. BIGGE.

1. Criminal Law—Jeopardy—Jury.
   An accused is *prima facie* in jeopardy when his trial has been entered upon and progressed through selection and swearing of a jury (Const. 1908, art. 2, § 14; 3 Comp. Laws 1929, § 17133).

2. Same—Mistrial—Discretion of Court.
   Whether or not circumstances establish that a mistrial should be declared rests in the sound discretion of the trial judge.

3. Jury—Right to an Impartial Jury.
   The right of an accused person to a trial by an impartial jury is one of which he cannot be deprived but the people have an equal right to a jury no member of which has obtained a place thereon for the purpose of preventing a righteous verdict.

4. Criminal Law—Impartial Jury—Mistrial.
   If, during the progress of the trial of a criminal case, the trial judge learns, or it is satisfactorily made to appear to him, that one or more jurors had obtained places on the jury

intending to convict or acquit the accused, whatever the evidence, it is the trial judge's duty to declare a mistrial, as the right to a jury trial is confined to the right to a trial by an impartial jury.

5. Same—Mistrial—Cause.

The trial judge would not be justified in discharging a jury and declaring a mistrial in a criminal case for slight cause.

6. Same—Mistrial—Private Conversation of Accused with a Juror.

The trial court did not abuse his discretion in declaring a mistrial after jury was sworn but before any witness was sworn and the court had observed defendant holding a private conversation with a juror in the court house during a noon adjournment of the case which had been remanded by the Supreme Court for new trial because of an occurrence in the presence of the jury after it was sworn and before a witness was examined nor was there an abuse of discretion in denying the plea of former jeopardy and the motion for defendant's discharge made at the subsequent term of court.

7. Same—Embezzlement—Evidence of Other Transactions—Intent—Corpus Delicti.

Vouchers relating to transactions other than the one relied upon to establish charge of embezzlement were admissible to show intent after proof of the *corpus delicti* had been made.

8. Same—Order of Proof—Discretion of Court.

The order of proof in a criminal case is largely discretionary with the trial court.

9. Same—Prosecutor's Argument to Jury.

While it is not proper for a prosecutor to tell the jury that he believes the defendant guilty, it is not error for the prosecutor to argue from the evidence that the defendant is guilty and to state what evidence convinces him and should convince the jury of such guilt.

10. Same—Argument to Jury—Reference to Evidence.

In prosecution for embezzlement, prosecutor's reference in his argument to jury to exhibit in defendant's handwriting giving exact amount and stating it was the equivalent of standing before the court and entering a plea of guilty was not reversible error but merely indicated his opinion that exhibit referred to established defendant's guilt,

11. SAME—JUDGES—COMMENT ON EVIDENCE—STATUTES.

Statute allowing trial judge in his charge to comment on the evidence, the testimony, and the character of witnesses does not allow the court to impose upon the jury his conclusion that the defendant is guilty of the offense as charged (3 Comp. Laws 1929, § 17322).

12. JURY—LEGISLATURE—COURTS.

The right to trial by jury may not be whittled away by the legislature or by a too liberal construction of statute law by the courts.

13. CRIMINAL LAW—MISCARRIAGE OF JUSTICE—DUE PROCESS OF LAW—STATUTES.

Statute providing that no judgment or verdict shall be set aside or reversed or new trial granted in a criminal case unless it affirmatively appears that the error complained of has resulted in a miscarriage of justice may mollify minor errors which clearly can be held not to affect the result but it is not a cure-all, and it must serve within constitutional limitations and cannot cure an error depriving an accused of the right of due process of law (3 Comp. Laws 1929, § 17354).

14. SAME—JUDGE'S STATEMENT AS TO DEFENDANT'S GUILT.

Trial judge's statement in prosecution for embezzlement that he was convinced that defendant was guilty of the crime as charged, deprived defendant of his constitutional right of a free trial by jury notwithstanding brief statement at end of charge that jurors were the ones to decide whether defendant was guilty and that their judgment must be independent of any opinion (3 Comp. Laws 1929, § 17354).

Appeal from Manistee; Sample (George W.), J., presiding. Submitted January 16, 1941. (Docket No. 116, Calendar No. 41,229.) Decided March 11, 1941.

Charles G. Bigge was convicted of embezzlement. Reversed and remanded for a new trial.

*Kim Sigler* and *Max Hamlin,* for appellant.

*Herbert J. Rushton,* Attorney General, *Rupert B. Stephens,* Prosecuting Attorney, and *Howard L.*

*Campbell,* Special Prosecuting Attorney, for the people.

Boyles, J. Defendant appeals from conviction for embezzlement in trial by jury in Manistee county. A conviction for the same offense on a former jury trial was reversed by this court and the case remanded for a new trial. *People* v. *Bigge,* 288 Mich. 417. Appellant now seeks his discharge, or a reversal, for several reasons which will be considered in order.

Appellant claims he should be discharged on the ground of former jeopardy because of certain occurrences between the first and second jury trials. After the first conviction was reversed, the case was set for jury trial in Manistee county September 8, 1939. After some time consumed in its selection, a jury was finally accepted and sworn shortly before the noon adjournment on September 11, 1939. Immediately after adjournment, the public, jurors, and counsel proceeded to leave the courtroom by stairways, descending to the lower floor of the courthouse. The special prosecutor observed the defendant and one of the jurors engaged in conversation somewhat privately at the bottom of one of the stairways. The trial judge was called from the courtroom to a place where he could, and did, observe the defendant and the juror engaged in this apparently private conversation. The trial judge, after observing the same, called the defense counsel and both court and counsel observed the incident, after which the defendant recognized the trial judge watching him and walked away. Although the length of time is in dispute, apparently defendant and the juror conversed together two or three minutes. No one claims to have heard what was said. When court was resumed after the noon re-

cess, the court requested counsel to retire to the judge's chambers where a conference was held between the court and counsel for 15 minutes, after which they reentered the courtroom. The special prosecutor thereupon, in the presence of the jury, started to refer to the conversation and asked to make a motion. Counsel for defendant thereupon stated:

"*Mr. Sigler:* If Mr. Campbell makes any statements, I ask that he be sworn. This case has been reversed because of prejudicial remarks—we had to go to the Supreme Court and it was reversed because of prejudicial remarks by Mr. Campbell."

Mr. Campbell was thereupon sworn by the clerk, and stated:

"I saw Alphonse Carboneau talk at the foot of the stairway in this building to Mr. Bigge. I immediately called to witness it, Mr. Donald MacDonald who stood alongside of me. I immediately called his Honor, Judge Sample. Judge Sample discussed the matter briefly. He turned and walked back into the court room and related it to Mr. Sigler or to Mr. Powers.

"*The Court:* I first called Mr. Powers and Mr. Powers called Mr. Sigler. That was because Mr. Powers was nearer to me.

"*Mr. Campbell:* That was right you did first call Mr. Powers. He was nearer and he called Mr. Sigler. Because of this misconduct of the defendant in this case, as well as juror Alphonse Carboneau, I am satisfied that the People of the State of Michigan cannot receive a fair and impartial trial, which the law accords them. I will ask that this jury, because of the misconduct of Mr. Carboneau and the defendant in this case, be dismissed and that the case stand ready for trial at the next term of court or until a suitable jury can be selected."

He further stated he did not know what the conversation was; that it lasted at least three minutes; that he didn't hear the conversation but saw their lips moving. Counsel for defendant objected to granting of the motion for mistrial. The court then said:

"On what I saw I wouldn't convict anyone. I don't know how long the conference had been going on between Mr. Carboneau and Mr. Bigge. It could have been a few minutes, but at the time Mr. Bigge recognized me watching him, he walked off immediately. He wasn't talking at that time. I couldn't tell—Mr. Carboneau, I think, whose back was turned my way—I couldn't tell whether he was engaged in a conversation or not, but the harm to this case is done.    *    *    *

"This cause could not now proceed with any degree of fairness and it does not require any investigation. That is why I asked to have a conference without a jury. The jury may have unique ability to try to get this out of their minds and after the trial of the cause—and after hearing the trial of this cause, they wouldn't be trying this matter upon the merits of this case.

"It doesn't make any difference how hard you try—he can't get this out of his mind. It might prejudice the people or it might prejudice Mr. Bigge. It doesn't make any difference to me. It would be my duty to dispose of the matter right here, before putting the county of Manistee to further expense. The expense hasn't been a great deal thus far, just the expense of selecting the jury, which is regrettable, in as much as we get nothing from it. The court can't after a statement of this kind, in which the court has had to engage, the court could not allow the case to proceed because of the prejudice."

The court thereupon granted the motion and ordered the cause to proceed at the following term

of court. Subsequently the defendant filed a plea of former jeopardy and a motion to discharge the defendant, which was heard upon the opening of court before calling a jury in the present trial. The court denied the motion.

The Constitution (1908), art. 2, § 14, provides: "No person, after acquittal upon the merits, shall be tried for the same offense."

The code of criminal procedure, chap. 3, § 5 (3 Comp. Laws 1929, § 17133 [Stat. Ann. § 28.858]), provides:

"No person shall be held to answer on a second charge or indictment for any offense for which he has been acquitted upon the facts and merits of the former trial but such acquittal may be pleaded. or given in evidence by him in bar of any subsequent prosecution for the same offense."

This State is committed to the view upon the subject of former jeopardy adopted by the Federal courts under the Federal Constitution. An accused is *prima facie* in jeopardy when his trial has been entered upon and progressed through selection and swearing of a jury. *People* v. *Schepps,* 231 Mich. 260. Whether or not circumstances establish that a mistrial should be declared rests in the sound discretion of the trial judge.

"In our effort to see that the rights of persons accused of crime are protected, we should not overlook the fact that the people also have interests that should be safeguarded. It is a right of which the accused cannot be deprived to have his case tried by an impartial jury. The people have an equal right to have their case tried by a jury no member of which has obtained a place thereon for the purpose of preventing a righteous verdict. If, during

the progress of the trial, the trial judge learns, or it is satisfactorily made to appear to him, that one or more jurors had obtained places on the jury intending to convict the accused whatever the evidence, can there be any doubt that it is not only his right, but his duty, to say there has been a mistrial? Can there be any doubt of the converse of this proposition? The accused has a right to a trial by a fair and impartial jury; but he has no vested right to a trial by a jury some member of which is not impartial, but who obtained his place thereon for the purpose of acquitting the accused, whatever might be the evidence. The trial judge would not be justified in discharging a jury and declaring a mistrial for slight cause; but if the facts exist as found by the trial judge after a careful investigation made by him, it would be a reflection upon the administration of justice to say the trial must proceed. The conduct of the two jurors and of the court officer indicates a very strong probability that improper influences were at work which might affect the verdict of the jury, and justified the conclusions of the trial judge." *In re Ascher,* 130 Mich. 540, 551, 552 (57 L. R. A. 806).

In *People* v. *Schepps, supra,* this court held:

"This court is not required to pass upon the wisdom of the course the trial court pursued, but upon whether there were sufficient circumstances shown for a basis of the trial court's decision that the juror was disqualified from serving in the case and in that connection whether it affirmatively appears there was an abuse of the discretion with which the trial court was endowed. To constitute a finding of former jeopardy requiring us to reverse this case and discharge the defendant the action of the trial judge must have been such that this court can affirmatively find there was no manifest necessity or that the ends of public justice would not have been

otherwise defeated. Upon this record we are unable to so find.''

In the case of *People* v. *Diamond*, 231 Mich. 484, after a jury had been sworn and a witness examined, when court convened after recess, the prosecutor, in the absence of the jury, stated to the court that the daughter of the defendants was at the lunch table with two of the jurors. The daughter, as well as the two jurors, were thereupon questioned by the court and they all denied in substance any conversation having any particular bearing upon the trial. The trial court discharged the jury. The court held:

"What occurred necessitated the exercise of the court's judicial discretion in granting or denying the motion of the prosecutor. Unless there was a clear abuse of such discretion, we should not order these defendants discharged. Had the trial proceeded without any reference to what occurred in the cafe, it would, doubtless, as stated by the jurors, have made no impression upon them. The result of the investigation conducted, and properly so, by the court could but have left them impressed with the thought that the opinions they might express in the jury room as to the guilt or innocence of the defendants would be closely scrutinized by their fellow jurors and the conclusion they reached commented upon at the close of the trial. The trial court had the opportunity, denied to us, of seeing the parties interrogated, observing their frankness, and observing the effect of what occurred not only upon the two jurors but upon the rest of the panel. After due consideration, we are unwilling to say that there was such an abuse of discretion on his part in ordering the jury discharged as should have caused him to sustain the plea of former jeopardy."

In the case at bar, the defendant himself caused the situation which gave rise to the mistrial. He had been through a former trial and without doubt

knew what result might follow a private conversation between himself and a juror. The trial court knew that the former conviction had been reversed because of an occurrence in the presence of the jury after it was sworn and before a witness was examined. The court was obviously concerned that no similar situation should arise again which might require a reversal on similar grounds. There was no abuse of discretion in declaring the mistrial, and there was no abuse of discretion in denying the plea of former jeopardy and the motion for defendant's discharge.

Defendant seeks reversal on the ground that certain evidence and exhibits were offered and received before establishing the *corpus delicti.* This evidence consisted of vouchers relating to transactions other than the one relied upon to establish the charge of embezzlement. The main object of this testimony was to show intent, and it was held admissible for that purpose in *People* v. *Bigge, supra.* The people claim with some reason that proof of the *corpus delicti* had been made prior to the time objection was raised to the order of proof. We do not think that any error was committed in this respect. *People* v. *Kemp,* 76 Mich. 410; *People* v. *Gerndt,* 244 Mich. 622. The order of proof is largely discretionary with the court. *People* v. *Marion,* 29 Mich. 31; *People* v. *Kennedy,* 267 Mich. 430.

Defendant claims reversible error because of a statement made by the special prosecutor in his argument to the jury, referring to a certain exhibit which had been admitted without objection and read to the jury. The argument to the jury was as follows:

"*Mr. Campbell:* Can there be any more written confession—in his own handwriting, giving the exact amount. In spite of that can a jury say on the

evidence, 'he is not guilty,' as he did in this case? It strikes me, gentlemen, that this is equivalent to standing before the court and entering a plea of 'guilty.' "

It is not proper for the prosecuting officer to tell the jury that he believes the defendant guilty. However, it is not error for a prosecutor to argue from the testimony that the defendant is guilty and to state what evidence convinces him and should convince them of such guilt. We view the prosecutor's argument in this case merely as indicating his opinion that the exhibit referred to by him established the guilt of the defendant. The rulings of this court were not overreached by the prosecutor. *People* v. *McElheny*, 221 Mich. 50; *People* v. *Hess*, 85 Mich. 128.

It is claimed that reversible error was committed by the court in his charge to the jury as to the guilt of the defendant. The charge covers 21 pages of the printed record. After covering fully the respective claims of the people and of defendant and after charging the jury in detail as to the law applicable to the case, at the conclusion of his charge the court said:

"We pity people who are indeed criminal, and we pity those who are even accused of crime, but if a man with his eyes open and with ordinary brains God has given him to pass in and out of a community, can't hold himself in leash and obey laws that have been laid down by all people of the State of Michigan, then he alone is to blame for classifying himself with the criminal class. Just think what the State has done to protect those who might be wrongfully accused—just a few of the things: He is presumed to be innocent; it takes 12 jurors to declare him guilty—that must be unanimous; they must be

jurors of his peers; he has the benefit of the presumption of innocence until he is proven guilty beyond all reasonable doubt (I always say 'beyond all reasonable doubt' or 'beyond every reasonable doubt'—not only the article 'a') but until he is proven guilty beyond all or every reasonable doubt; he doesn't need to take the stand to prove himself innocent, the State has the burden all the way through—nothing can be done about it—the prosecutor cannot comment upon it if he refuses to take the stand. I could go on and on, and on. The people of this great commonwealth and most of the great commonwealths of our country have done so. No one ought to suffer wrongfully.

"Recently, I say within the last few years, the State of Michigan has given the courts, who preside over criminal cases, a right to comment upon the testimony. I think this morning that I will make some comment on the testimony as I see it.

"There is a piece of evidence here in writing that I haven't been able in my own mind to explain away, so that I could feel the defendant was innocent of this crime. That is that fatal letter, and it is the testimony of the expert that heard the conversations that have been related before the jury, if true, and it is the conversations of the attorney from Grand Rapids, a young man, which substantiates in my judgment the charge of the People here that this defendant is guilty.

"With the letter and with the testimony of Mr. Schnorbach and, as partly corroborated by the attorney from Grand Rapids, as well as the young expert who testified, I feel, and as I say, with the letter as a basis as something that cannot be mistaken, cannot be changed,—it is in writing—and with that letter in existence and the testimony of Mr. Schnorbach, the testimony of the young lawyer who was employed by the Filer Fibre Company, his firm in Grand Rapids, the testimony of the young expert,

I am convinced that the defendant in this case, gentlemen of the jury, is guilty of the crime as charged.

"I think I would be a coward and not performing my full duty, where it seems as clear to me as the evidence seems in this case, but you don't need to take my judgment for it. The jury are not bound by the comment the court makes upon the testimony as he sees it.

"I am stating to you—trying to do it honestly— my impression, my opinion, if you please."

The court then concluded his charge by a brief statement that the jurors had a duty to perform, and not the court, of saying whether or not the defendant was guilty; that their judgment must be independent of any opinion; and that the jurors were the ones to decide whether the defendant was guilty.

No one can say with assurance what impression was left in the mind of any individual juror by this manner of concluding the charge by the court. The minds of some jurors might retain more impressively the statement by the court that it rested with the jurors themselves to determine the guilt or innocence of the accused. On the other hand, some one or more jurors might have been influenced in their verdict by the knowledge that the judge was convinced as a matter of fact, as well as law, that the defendant was guilty of the crime as charged. The jury in this case deliberated nearly 12 hours before reaching a verdict. It is well known that jurors in a criminal case may be impressed by any conclusion reached by the judge as to the guilt of the accused. In the case at bar, as admitted in the brief for the people, "the trial judge has been on the bench for many years, and his experience gained by years of service is of value in weighing the evi-

dence introduced." The code of criminal procedure, chap. 8, § 29 (3 Comp. Laws 1929, § 17322 [Stat. Ann. § 28.1052]), allows the trial judge, in his charge, to comment on the evidence, the testimony, and the character of witnesses:

"The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require."

However, this does not allow the court to impose upon the jury his conclusion that the defendant is guilty of the offense as charged.

"The Constitution of the State provides that 'The right of trial by jury shall remain, but shall be deemed to be waived in all civil cases, unless demanded by one of the parties in such manner as shall be prescribed by law.' Const. 1850, art. 6, § 27. The right is to *remain.* What right? Plainly the right as it existed before; the right to a trial by jury as it had become known to the previous jurisprudence of the State. *Underwood* v. *People,* 32 Mich. 1 (20 Am. Rep. 633). The right is not described here; it is not said what shall be its incidents; it is mentioned as something well known and understood, under a particular name; and by implication at least, even a waiver of its advantages is forbidden. If the accused himself cannot waive them, plainly the legislature cannot take them away. The next section of the Constitution repeats the guaranty of this method of trial 'in every criminal prosecution,' and nothing is better settled on the authorities than that the legislature cannot take away a single one of its substantial and beneficial incidents; *Opinions of Judges,* 41 N. H. 550; *Ward* v. *People,* 30 Mich. 116; and even the accused cannot waive any one of the essentials. *Work* v. *State,* 2 Ohio (N. S.), 296;

*Cancemi* v. *People,* 18 N. Y. 128; *Hill* v. *People,* 16 Mich. 351; *Allen* v. *State,* 54 Ind. 461." *Swart* v. *Kimball,* 43 Mich. 443, 448.

The right of trial by jury is too firmly established in American jurisprudence to allow it to be whittled away by the legislature or by a too liberal construction of statute law by the courts. Once the door is open for allowing the opinion of the court to be impressed upon jurors that one charged with crime is guilty of the offense, the fundamental right of trial by jury is impaired. This court has said that the trial judge should not express an opinion as to what he thinks the verdict should be, or how he thinks the jury should decide the case. *People* v. *Lintz,* 244 Mich. 603.

It is provided by 3 Comp. Laws 1929, § 17354 (Stat. Ann. § 28.1096):

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this State in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

The statutory provision may mollify minor errors which clearly can be held not to affect the result, but it is not a cure-all and it must serve within constitutional limitations. It cannot cure an error which deprives an accused of the right of due process of law. *People* v. *Bigge, supra; People* v. *Lewis,* 264 Mich. 83. We are constrained to hold that the charge complained of deprived the defendant of his constitutional right of a free trial by jury.

We have considered the other questions relied upon by defendant in regard to the method of withdrawing two of the fourteen jurors, and the court's action in asking the jury to return to the jury room for further deliberation. There was some impropriety in the method followed in withdrawing the names of two jurors. However, these claimed errors will not occur on a retrial of the case.

The conviction must be set aside, and a new trial granted.

SHARPE, C. J., and BUSHNELL, CHANDLER, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred.