PEOPLE *v.* FREEMAN

1. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES—DEFENDANT'S MOTIVE OR INTENT—PLAN OR SCHEME.

Evidence of criminal defendant's alleged or proved criminal activity is admissible when it serves to show defendant's plan, motive, or lack of mistake; or when it tends to show that the offense charged was part of a plan or scheme of defendant (CL 1948, § 768.27).

2. CRIMINAL LAW — EVIDENCE — TESTIMONY OF ACCOMPLICE — OTHER OFFENSES.— PLAN OR SCHEME.

Refusal of trial judge to exclude testimony by defendant's accomplice that he and defendant had committed a series of crimes culminating in the crime charged *held* proper, where the testimony tended to show the existence of a plan or

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  29 Am Jur 2d, Evidence §§ 320–326.
[3]  21 Am Jur 2d, Criminal Law § 236.
[4]  21 Am Jur 2d, Criminal Law § 426.
[5]  21 Am Jur 2d, Criminal Law § 427.
[6]  21 Am Jur 2d, Criminal Law §§ 428, 432.
[7]  21 Am Jur 2d, Criminal Law § 328.

scheme and the trial court correctly instructed the jury that they were not to consider the testimony as substantive evidence of the offense charged.

3. CRIMINAL LAW—DUE PROCESS—IMPARTIAL TRIAL—PUBLICITY.

Whether allegedly prejudicial pretrial publicity has denied a criminal defendant his right to a fair trial in a particular community depends on the circumstances in each case.

4. CRIMINAL LAW—DUE PROCESS—FAIR TRIAL—PUBLICITY—CHANGE OF VENUE.

Unquestionable prejudice must be shown to have been created by pretrial publicity before a change of venue is required in a criminal prosecution.

5. CRIMINAL LAW—FAIR TRIAL—CHANGE OF VENUE—DISCRETION.

A motion for change of venue is addressed to the discretion of the trial court, and the trial court may withhold decision on the motion until after an attempt is made to seat an impartial jury.

6. CRIMINAL LAW—DUE PROCESS—FAIR TRIAL—CHANGE OF VENUE—ABUSE OF DISCRETION.

Trial court's denial of defendant's motion for change of venue will not be overturned unless an abuse of discretion is clearly shown.

7. CRIMINAL LAW—WITNESSES—DUTY OF PROSECUTION TO INDORSE—APPEAL AND ERROR.

Omission by prosecution to indorse witnesses on a criminal information is not to be lightly condoned, but failure to perform the mere manual act of writing a name on the information does not by itself constitute reversible error where the record shows that the witness's testimony was purely rebuttal and discloses reasons which would justify belated indorsement.

Appeal from Kent, Stuart Hoffius, J. Submitted Division 3 December 3, 1968, at Grand Rapids. (Docket No. 3,554.) Decided February 25, 1969.

Robert F. Freeman was convicted of robbery armed. Defendant appeals. Affirmed. . . .

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *S. J. Venema,* Chief Appellate Attorney, and *Donald Zerial,* Assistant Prosecuting Attorney, for the people.

*Hillman, Baxter & Hammond* (*William S. Farr.* of counsel), for defendant.

BEFORE: R. B. BURNS, P. J., and J. H. GILLIS and CORKIN,* JJ.

J. H. GILLIS, J. Defendant Robert F. Freeman and a codefendant, David Barney, were charged with armed robbery[1] of the E & W Outlet Exchange in Grand Rapids on January 11, 1965. Barney pleaded guilty to the charge and subsequently testified at defendant's trial as a rebuttal witness for the prosecution.

Barney testified that he had met defendant in Kansas City about 6 months before their arrest in Grand Rapids. He then explained in considerable detail how he and defendant had carried out a series of robberies and burglaries which extended through Kansas, Missouri and Illinois and which ended with their arrest in Grand Rapids. Over objection by defense counsel, the trial court admitted Barney's testimony into evidence pursuant to CL 1948, § 768.27 (Stat Ann 1954 Rev § 28.1050), which provides:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

[1] CLS 1961, § 750.529 (Stat Ann 1968 Cum Supp § 28.797).

on his part, *or the defendant's scheme, plan or system in doing the act, in question,* may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant." (Emphasis supplied.)

Defendant's initial allegation of error is that the statute was improperly interpreted and applied by the trial court.

Defendant's contention is based on the premise that if the intent or motive of the accused is not in issue, testimony of previous alleged or proven criminal activity is not admissible. Such a construction, however, is contrary to the express language of the statute.

As stated in 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 447:

"The purpose and object of this new section of the statute was to do away with the rule as to proof of other offenses and permit the introduction of such testimony, even though it might tend to show the commission of another prior or subsequent offense committed by the defendant. Now, where the defendant's motive, intent or absence of mistake, etc., is involved, the statute permits testimony of like acts to be introduced to characterize the defendant's act. It is difficult to lay down any fixed rule as to what the court may do in admitting or rejecting proffered evidence under the statute. Testimony of other acts permitted by the statute is not to prove the *res gestae.* They are merely admissible as bearing upon the question of intent which may be involved *or* upon a general plan or scheme." (Emphasis supplied.)

There is a distinction, therefore, between cases in which such testimony is admitted to show motive,

intent or absence of mistake, etc., and cases where it is admitted to show that the commission of the offense charged was part of a general plan or scheme. However, *both* types of cases come within the exceptions to the general rule created by the statute.

"The general rule is well settled that proof of the commission of other similar offenses by the defendant cannot be proved for the purpose of showing that he was more likely to have committed the offense for which he is on trial, nor as corroborating the testimony relative to the commission of the principal offense. The rule, however, has its exceptions where the act in question is a part of a series of acts or part of a plan or system. In such cases it is relevant to show other similar acts of the same person having the same effect, or at about the same time, or connected with the same subject matter." 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 450.

Barney's testimony was to the effect that the armed robbery of the E & W Outlet Exchange with which defendant was charged was part of a series of such offenses committed by defendant. The record reveals that the trial court restricted the purpose for which the jury could consider Barney's testimony to the establishment of motive, intent, scheme or plan and instructed the jury not to consider such testimony as substantive evidence of the alleged offense. In view of the trial court's limiting instruction, Barney's testimony was properly admissible as evidence of defendant's "scheme, plan or system in doing the act." *People* v. *Neal* (1967), 8 Mich App 586.

Defendant further contends that the trial court erred in denying defendant's motion for a change of venue. The motion alleged that defendant's right to a fair and impartial trial in Grand Rapids had

been impaired because of prejudice against defendant created by a newspaper article and various radio and television reports.

The newspaper article appeared on the front page of the Grand Rapids Press on Tuesday, March 23, 1965, 8 days before the trial began. It was entitled "Revenge Keys Trail of Crime" and was an account of remarks made by David Barney to the police after he pleaded guilty to the armed robbery for which defendant was to be tried. The article specifically eliminated any details of the robbery in Grand Rapids but set forth Barney's account of the other robberies by himself and defendant in Kansas and Missouri. Defendant had formerly been a medical doctor practicing psychiatry in Missouri but his license had been revoked by the state. The article stated that the robberies were made against persons who were connected in different ways with that revocation.

The statements on radio and television were also accounts of remarks made by Barney implicating defendant as related by an inspector of the Grand Rapids police department. Some of the statements indicated a belief on the part of the inspector that Barney was telling "all" in regard to his criminal escapades with defendant and that Barney was telling the truth. One of the reports attributed to Barney the statement that defendant had drawn a detailed map of the E & W Outlet Exchange before the robbery.

In support of his contention that the denial of his motion for a change of venue was error, defendant cites various cases in which convictions were reversed because of highly prejudicial pretrial publicity. See *Irvin* v. *Dowd* (1961), 366 US 717 (81 S Ct 1639, 6 L Ed 2d 751); *Shepherd* v. *Florida* (1951), 341 US 50 (71 S Ct 549, 95 L Ed 740); *United States*,

*ex rel. Sheffield,* v. *Waller* (WD La, 1954), 126 F
Supp 537; *United States, ex rel. Bloeth,* v. *Denno*
(CA2, 1963), 313 F2d 364; *Rideau* v. *Louisiana*
(1963), 373 US 723 (83 S Ct 1417, 10 L Ed 2d 663).
A reading of the above cases, however, indicates that
a judicial determination of whether allegedly prej-
udicial pretrial publicity has denied a defendant his
right to a fair trial by an impartial jury in a par-
ticular community depends on the circumstances in
each case. Moreover, each of the above cases in-
volved pretrial publicity that was so highly inflam-
matory that a trial was merely a formal gesture in
furtherance of a conviction of a defendant who, for
all practical purposes, had been prejudged. The
cases adhere to the principle that when the exercise
of the freedoms of speech and of the press are so
abused that a fair trial within the community is
made impossible, due process prohibits depriving
a man of his liberty through a meaningless obeisance
to justice.

Such is not the nature of the pretrial publicity in
the present case. More of a showing of prejudice
is required than that suggested by defendant that
the statements made in the press and on radio and
television would be inadmissible at trial. Unques-
tionable prejudice must be shown to have been creat-
ed by pretrial publicity before a change of venue is
required.

Being mindful of the basis for defendant's motion
for change of venue, the trial judge carefully con-
ducted a *voir dire* examination for the purpose of
eliciting any predispositions or prejudice which the
news accounts might have created in the minds of
the jurors. From this examination he concluded as
follows:

"It seems to me that the examination of this jury
has indicated that the respondent—there has been

newspaper publicity, but on any major crime, be it
homicide or whatever the type of crime, there is
bound to be certain publicity. I think many of the
jurors have indicated they did not read the partic-
ular article that counsel was referring to at the time
that he examined them and even held up in front of
them the newspaper article of March 23rd.

"I think generally the answers by this jury have
indicated that they are a fair and impartial jury.
They have had experience in the trial of criminal
cases. They have indicated that they would try the
case based upon the testimony and the exhibits."

Defendant's motion for change of venue was ad-
dressed to the trial court's discretion. CL 1948, §
762.7 (Stat Ann 1954 Rev § 28.850). The trial court
properly reserved decision on the motion until an
attempt was made to obtain a fair and impartial
jury. See *People* v. *Swift* (1912), 172 Mich 473;
*People* v. *Dailey* (1967), 6 Mich App 99. After ob-
taining what he believed to be a fair and impartial
jury, the trial court denied the motion for a change
of venue and proceeded to trial. To establish error,
an abuse of discretion must be shown. *People* v.
*Swift, supra.*

As stated in *People* v. *Jenkins* (1968), 10 Mich
App 257, 261, 262:

"Jurors who have heard of or have read of the
case, without more, are not disqualified as jurors,
and their inclusion does not deny defendant a fair
trial. See *People* v. *Quimby* (1903), 134 Mich 625;
*People* v. *Schneider* (1944), 309 Mich 158; *People* v.
*Dailey, supra.* A juror who has formed an opinion
may not be challenged for cause, providing the opin-
ion is not positive in character, and he may render
an impartial verdict. CL 1948, § 768.10 (Stat Ann
1958 Rev § 28.1033). In this case, all jurors who
sat stated that they had no fixed opinion as to the

guilt or innocence of the accused and that they could render a fair and impartial verdict.

"Counsel refers us to a decision on due process of law as provided by the 14th Amendment, regarding a fair trial, as binding on our determinations in this matter. It is true that a trial judge may not allow the press to interfere with the course of trial or allow the decision to be based on extraneous publicity. *Sheppard* v. *Maxwell* (1966), 384 US 333 (86 S Ct 1507, 16 L Ed 2d 600). This situation, however, is not alleged to be present in this case. We deal with the problem of prior information and community feeling as affecting a defendant's right to a fair trial. We are referred to and examine in detail the decision of *Irvin* v. *Dowd* (1961), 366 US 717 (81 S Ct 1639, 6 L Ed 2d 751), and regard it as controlling. In American and Anglo-Saxon jurisprudence there is the invaluable right to jury. It must be a panel of impartial jurors. There must be a fair tribunal which renders a verdict on evidence presented at trial for a proceeding to meet the minimum standards of due process. It is not necessary that they be without impression or opinion. They must, however, be able to lay aside their impressions and base their verdict on the evidence. Where there is strong community feeling and a pattern of deep and bitter prejudice in the community, the influence of that opinion makes a strong impression, nearly impossible to detach from the mental processes of the average man. Trial under such influence denies due process. The burden of showing the existence of these conditions is on the challenger.

"The defense has shown that there were newspaper articles and that some of the jurors had read or heard of the case. This showing, without more, is not sufficient. Defense presents no evidence of a strong community feeling. The trial judge in the community has his senses and personal knowledge of the community to detect this community feeling. An appellate court has only the cold record upon which to rely. There must be a definite, clear show-

ing of abuse of discretion to overturn the trial judge's decision to commence or to acquiesce in the continuance of a trial. Such a showing has not been made in this case either in the denial of a change of venue or in the denial of a continuance. The first claims of error are resolved against the defendant."

Defendant further alleges that the trial court erred in permitting a police officer who had not been indorsed on the information to testify as a rebuttal witness. The record shows that the prosecution had no intention of calling the witness until defendant took the stand. The witness's testimony was merely for rebuttal and was not part of the people's affirmative case. While omission to indorse is not lightly to be condoned, the Supreme Court stated in *People* v. *Kennedy* (1934), 267 Mich 430, 435, that "failure to perform the mere manual act of writing a name on the information alone does not constitute reversible error where the record affirmatively shows that the testimony is purely rebuttal and discloses reasons which would justify the indorsement. *People* v. *Tamosaitis,* 244 Mich 258." The admission of the testimony of the previously unindorsed rebuttal witness did not result in a miscarriage of justice. CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096).

Affirmed.

All concurred.