**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:     Justices:
Clifford W. Taylor     Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 20, 2007

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                         No. 130353

BOBBY LYNELL SMITH,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to appeal to consider whether *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932), or *People v Robideau*, 419 Mich 458; 355 NW2d 592 (1984), sets forth the proper test in Michigan for determining when multiple punishments are barred on double jeopardy grounds.

Following a jury trial, defendant was convicted of two counts of first-degree felony murder, MCL 750.316(1)(b), with larceny as the predicate felony. Defendant was also convicted of two counts of armed robbery, MCL 750.529, and four counts of possession of a firearm during the commission of a felony, MCL

750.227b. Defendant appealed, asserting that his convictions for both first-degree felony murder and armed robbery violate the Double Jeopardy Clause of the Michigan Constitution, Const 1963, art 1, § 15. The Court of Appeals concluded that there was no evidence that defendant had committed the separate offenses of robbery and larceny and therefore held that defendant's armed robbery convictions violated double jeopardy. As a result, the Court of Appeals vacated defendant's two convictions and sentences for armed robbery and the accompanying convictions for felony-firearm. Unpublished opinion per curiam, issued December 27, 2005 (Docket No. 257353). We conclude that the Court of Appeals erred in its double jeopardy analysis by comparing the felony-murder convictions to the non-predicate felonies of armed robbery. Because armed robbery was not the predicate felony involved in the instant felony-murder convictions, reversal is not required pursuant to *People v Wilder*, 411 Mich 328; 308 NW2d 112 (1981). We further conclude that the language "same offense" in Const 1963, art 1, § 15 means the same thing in the context of the "multiple punishments" strand of the Double Jeopardy Clause as it does in the context of the "successive prosecutions" strand addressed by the Court in *People v Nutt,* 469 Mich 565; 677 NW2d 1 (2004). We therefore hold that *Blockburger* sets forth the proper test to determine when multiple punishments are barred on double jeopardy grounds. Because each of the crimes for which defendant here was convicted, first-degree felony murder and armed robbery, has an element that the other does not, they are not the "same

2

offense" and, therefore, defendant may be punished for each. Accordingly, we reverse the part of the judgment of the Court of Appeals that vacated the armed robbery convictions and sentences and two of the felony-firearm convictions and sentences, and remand this case to the trial court to reinstate defendant's convictions and sentences for armed robbery and the accompanying felony-firearm convictions and sentences.

## I. FACTS AND PROCEDURAL HISTORY

At approximately 10:30 a.m. on January 7, 2003, a customer entering the City Tire store in Pontiac discovered the bodies of store employee Stephen Putman and store owner Richard Cummings. Putman had died of a gunshot wound to the neck and Cummings had died from two gunshot wounds to the head. The police determined that $2,000 in cash that Cummings brought to the store from home to use in the store's cash register was missing, as were the store's proceeds from that morning. In addition, Pontiac police officers interviewed the victims' families and determined that both Putman's and Cummings's wallets were missing and that the money Cummings carried in his front pocket was also missing.

On January 8, 2004, the police received a call from Tywanda Smith, defendant's wife, who informed them that defendant confessed to her that he had

3

committed the murders.[1]  Smith testified that defendant told her that he first asked "the young guy" [Putman] for the money but that "the young guy acted like he didn't know what [defendant] was talking about and [defendant] shot him." Defendant then asked the "old guy" [Cummings] where the money was, and Cummings responded, "What do you think you are going to do?  You going to rob me?"  Cummings then hit defendant on the hand with an unknown object and defendant responded by shooting Cummings twice in the head.  Defendant then admitted that, after the shootings, he took money and a set of keys from the store, but did not take any vehicle.  Defendant also told Smith that the police had no evidence implicating him in the murders because he threw the gun into the river.

Defendant was prosecuted for two counts of first-degree felony murder, with larceny as the predicate felony, two counts of armed robbery, and four counts of felony-firearm.  Following a jury trial, defendant was convicted on all charges. He appealed, contending that his convictions for two counts of felony murder and two counts of armed robbery committed during the course of the murders constituted a violation of the Double Jeopardy Clause of the Michigan Constitution.  The Court of Appeals undertook its analysis by noting that larceny

---

[1] While defendant told Smith about the murders "some days" after they occurred, she did not contact the police until she saw newspaper and television coverage commemorating the one-year anniversary of the murders.  The television coverage included a plea for information to assist in the investigation of the murders.  Smith admitted on cross-examination that she told no one about her knowledge of the murders until contacting the police.

is a lesser included offense of robbery and that there was no evidence that defendant committed the separate offenses of robbery and larceny. Slip op at 2. On that basis, the Court of Appeals concluded that armed robbery, not larceny, was the predicate felony for the instant felony-murder convictions and, therefore, that it was bound by *Wilder* to reverse the armed robbery convictions as well as the accompanying felony-firearm convictions.[2] *Id.* We granted the prosecutor's application for leave to appeal.[3] 475 Mich 864 (2006).

## II. STANDARD OF REVIEW

A double jeopardy challenge presents a question of constitutional law that this Court reviews de novo. *Nutt, supra* at 573.

## III. ANALYSIS

Const 1963, art 1, § 15 states that "[n]o person shall be subject for the same offense to be twice put in jeopardy."[4] The primary goal in interpreting a constitutional provision is to determine the text's meaning to the ratifiers, the

___

[2] The Court of Appeals noted its agreement with Justice Corrigan's dissent in *People v Curvan*, 473 Mich 896, 903 (2005), in which she called into question the decision in *Wilder* that multiple punishments for felony murder and the predicate felony were barred on double jeopardy grounds, and stated that, absent *Wilder*, it would have held that "felony-murder is a distinct category of murder and not an enhanced form of armed robbery . . . ." Slip op at 2 n 1.

[3] We denied defendant's application for leave to appeal. 475 Mich 871 (2006).

[4] The analogous provision in the federal constitution, US Const Am V, states that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ."

people, at the time of ratification. *Wayne Co v Hathcock,* 471 Mich 445, 468; 684 NW2d 765 (2004). Justice Cooley described this principle of constitutional interpretation as follows:

> A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. "For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed." [Cooley, A Treatise on the Constitutional Limitations (Little, Brown, & Co, 1886), p 81 (citation omitted).]

The Double Jeopardy Clause affords individuals "three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *Nutt*, *supra* at 574. The first two protections are generally understood as the "successive prosecutions" strand of double jeopardy, while the third protection is commonly understood as the "multiple punishments" strand.

A. "SAME OFFENSE" FOR SUCCESSIVE PROSECUTIONS.

Before 1973, the Court consistently construed Michigan's Double Jeopardy Clause in a manner consistent with the federal courts' interpretation of the Fifth Amendment of the United States Constitution. See, e.g., *In re Ascher,* 130 Mich 540, 545; 90 NW 418 (1902) (stating that "the law of jeopardy is doubtless the

6

same under both [the federal and Michigan constitutions]"); [5] *People v Schepps,* 231 Mich 260, 267; 203 NW 882 (1925) (quoting *Ascher* for the proposition that the Court is "committed" to the view of double jeopardy protections set forth by federal courts); *People v Bigge,* 297 Mich 58, 64; 297 NW 70 (1941) (holding that "[t]his State is committed to the view upon the subject of former jeopardy adopted by the Federal courts under the Federal Constitution"). [6]

In *People v Townsend*, 214 Mich 267; 183 NW 177 (1921), the Court addressed the issue whether a defendant's conviction in municipal court of driving an automobile while intoxicated served as a bar to a subsequent prosecution for manslaughter arising out of the same drunken driving incident. We began our analysis by noting that under the federal interpretation of the Fifth Amendment, a defendant who commits two or more separate offenses during a single criminal transaction may be prosecuted for each, as long as the offenses are different. *Id.* at 275, citing *Gavieres v United States*, 220 US 338; 31 S Ct 421; 55 L Ed 489 (1911). To determine whether an offense is the "same offense" for double jeopardy purposes, the Court cited the same-elements test articulated by the Supreme Court of Massachusetts in *Morey v Commonwealth*, 108 Mass 433, 434

---

[5] *Ascher* interpreted the Double Jeopardy Clause of Const 1850, art 6, § 29, which stated, "No person after acquittal upon the merits shall be tried for the same offense."

(1871). The *Morey* rule, which would later be adopted by the United States Supreme Court in *Blockburger*, held that an offense is not the "same offense" if each statute requires proof of an element that the other does not. The Court concluded that the misdemeanor offense of driving an automobile while intoxicated was not the "same offense" as involuntary manslaughter and therefore affirmed the subsequent conviction. *Townsend, supra* at 281.

Thus, before 1973, the Court had construed Michigan's Double Jeopardy Clause in a manner consistent with the interpretation of the Fifth Amendment by federal courts, *Ascher,* and held that the test for determining whether an offense is the "same offense" for double jeopardy purposes was whether each offense requires proof of a fact that the other does not. *Townsend, supra*. However, in *People v White*, 390 Mich 245; 212 NW2d 222 (1973), the Court abandoned this traditional understanding, and instead adopted the "same transaction" test for the "successive prosecutions" strand of double jeopardy. Shortly thereafter, in *People v Cooper*, 398 Mich 450, 461; 247 NW2d 866 (1976), the Court also abandoned the federal approach to successive prosecutions by different sovereigns in favor of a rule under which successive prosecutions could only proceed if "it appears from the record that the interests of the State of Michigan and the jurisdiction which

_____

(…continued)
[6] *Schepps* and *Bigge* each interpreted the Double Jeopardy Clause of Const 1908, art 2, § 14, which stated, "No person, after acquittal upon the merits, shall be tried for the same offense."

8

initially prosecuted are substantially different." *Id.* at 461. Finally, in *Robideau,* the Court declined to adhere to the *Blockburger* test in the context of the "multiple punishments" strand of double jeopardy in favor of a rule intended to ascertain whether the Legislature intended to impose multiple punishments.

In *Nutt*, the Court granted leave to appeal to determine whether *White*'s interpretation of the language "same offense" in Const 1963, art 1, § 15 was consistent with the people's understanding when they ratified the constitution. We undertook our analysis by noting that *White*'s creation of the "same transaction" test was inconsistent with the ordinary meaning of the phrase "offense" as a "crime" or "transgression." *Nutt, supra* at 588. Moreover, and most critically, we concluded that *White*'s test was inconsistent with the understanding of the term "same offense" on the part of the ratifiers of our constitution. First, we noted that the framers of the constitution recognized that the Court had interpreted the double jeopardy provision of the 1908 Constitution in a manner consistent with the federal constitution. Second, we quoted the Address to the People, 2 Official Record, Constitutional Convention 1961, p 3364, which stated:

> "[Const 1963, art 1, § 15] is a revision of Sec. 14, Article II, of the present constitution. The new language of the first sentence involves the substitution of the double jeopardy provision from the U.S. Constitution in place of the present provision which merely prohibits 'acquittal on the merits.' This is more consistent with the actual practice of the courts in Michigan." [*Nutt, supra* at 590.]

In other words, when the people ratified Const 1963, art 1, § 15, they were advised that "(1) the double jeopardy protection conferred by our 1963

9

Constitution would parallel that of the federal constitution, and (2) that the proposal was meant to bring our double jeopardy provision into conformity with what this Court had already determined it to mean."[7] *Nutt, supra* at 590. In 1963, the federal Double Jeopardy Clause permitted successive prosecutions for all crimes committed during a single "transaction," as long as each crime required proof of a fact that the other did not. *Blockburger, supra* at 304. The *Nutt* Court noted that the *Blockburger* test "'focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.'" *Nutt, supra* at 576 (citation omitted). Because the "same transaction" test set forth in *White* is inconsistent with the federal approach, it is also inconsistent with the understanding of the ratifiers and, as a result, was overruled. *Nutt, supra* at 591-592.

In *People v Davis,* 472 Mich 156; 695 NW2d 45 (2005), the Court granted leave to appeal to determine whether the rule announced by *Cooper* for determining whether successive prosecutions by different sovereigns were barred

---

[7] By stating that the Michigan and federal double jeopardy clauses should be construed in a parallel fashion, "we do not mean that we are bound in our understanding of the Michigan Constitution by any particular interpretation of the United States Constitution." *Harvey v Michigan*, 469 Mich 1, 6 n 3; 664 NW2d 767 (2003). We mean only that we have been persuaded in the past that interpretations of the Double Jeopardy Clause of the Fifth Amendment have accurately conveyed the meaning of Const 1963, art 1, § 15 as well.

on double jeopardy grounds was consistent with the meaning of "same offense" set forth in the constitution. We undertook our analysis by noting *Nutt*'s conclusion that the ratifiers of our constitution intended that Michigan's Double Jeopardy Clause be construed consistently with Michigan precedent and the Fifth Amendment. At the time of ratification, the federal courts held that prosecution by one sovereign does not preclude a subsequent prosecution by a different sovereign based on the same act, where "'by one act [the defendant] has committed two offences, for each of which he is justly punishable.'" *Bartkus v Illinois*, 359 US 121, 132; 79 S Ct 676; 3 L Ed 2d 684 (1959) (citation omitted); see also *Heath v Alabama*, 474 US 82, 88; 106 S Ct 433; 88 L Ed 2d 387 (1985). The rule set forth in *Cooper* was based on the Court's detection of a trend in federal cases that brought *Bartkus* into disrepute. However, we recognized in *Davis* that this "trend" never came to fruition and, in fact, the United States Supreme Court validated the *Bartkus* reasoning in *Heath*. Therefore, in accord with the understanding that Michigan's double jeopardy provision should "be construed consistently with the federal double jeopardy jurisprudence that then existed," we overruled *Cooper* in *Davis, supra* at 168, and held that a defendant who commits one criminal act that violates the laws of two different sovereigns has committed two criminal acts for double jeopardy purposes.

In sum, an offense does not constitute the "same offense" for purposes of the "successive prosecutions" strand of double jeopardy if each offense requires proof of a fact that the other does not.

## B. "SAME OFFENSE" FOR MULTIPLE PUNISHMENTS.

## 1. PRE-1963 CASELAW

At issue in this case is whether "same offense" has the same meaning in the context of the "multiple punishments" strand of double jeopardy as it does in the context of the "successive prosecutions" strand. Pursuant to *Nutt*, we first examine Michigan caselaw addressing the "multiple punishments" strand of double jeopardy at the time of the ratification of the 1963 Constitution. While Michigan courts routinely applied the federal standard to the "successive prosecutions" strand, the Court did not address the "multiple punishments" strand until 1976. *Robideau, supra* at 481. Therefore, we must examine federal caselaw to determine how the Fifth Amendment was applied in the context of multiple punishments at the time our constitution was ratified. In *Blockburger,* the defendant was convicted of selling eight grains of morphine hydrochloride outside its original packaging[8] and for engaging in that sale without a written order of the

---

[8] The defendant was convicted under the former Harrison Narcotic Act, 26 USC 692, which stated:

> It shall be unlawful for any person to purchase, sell, dispense, or distribute any of the aforesaid drugs [opium and other narcotics] except in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this section by the person in whose possession same may be found . . . .

purchaser as required by the statute.[9]  The defendant claimed that because both convictions stemmed from a single narcotics sale, he could lawfully be punished only once for that single act.  The United States Supreme Court undertook its analysis by noting that the language of the statute created two distinct criminal offenses.  In order to determine whether a defendant who, by a single act, commits two distinct criminal violations may be punished for both, the United States Supreme Court held that

> the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.  *Gavieres v. United States*, 220 U.S. 338, 342 . . . .   In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in *Morey v. Commonwealth*, 108 Mass. 433:  "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."  Compare *Albrecht v. United States*, 273 U.S. 1, 11-12[; 47 S Ct 250; 71 L Ed 505 (1927)][10] . . . .  [*Blockburger, supra* at 304.]

---

[9] The defendant was convicted under the former 26 USC 696, which stated:

> It shall be unlawful for any person to sell, barter, exchange, or give away any of the drugs specified in section 691 of this title, except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue.

[10] In *Albrecht,* the United States Supreme Court held that "[t]here is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction."

14

Because each of the violations of the Harrison Narcotic Act at issue contained an element that the other did not, the United States Supreme Court held that the defendant could be punished for each violation.

The United States Supreme Court reaffirmed the "same elements" approach to multiple punishments in *Gore v United States,* 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405 (1958). In *Gore*, the defendant was charged with two counts of selling heroin "not in pursuance to a written order" of the person receiving the drugs; two counts of dispensing drugs that were not "in the original stamped package or from the original stamped package"; and two counts of facilitating concealment and sale of drugs, with knowledge that the drugs had been unlawfully imported. The defendant argued that the purpose behind each statute was to outlaw the nonmedicinal sale of narcotics and, therefore, Congress desired to punish only for a single offense when these multiple infractions are committed through a single sale. The United States Supreme Court disagreed, noting that, as in *Blockburger*, Congress's decision to create three separate criminal violations, each with elements independent of the others, demonstrated that it intended that each violation be punishable separately. The Court went on to characterize the defendant's argument as a policy argument and opined that such policy matters are better left to Congress:

> In effect, we are asked to enter the domain of penology, and more particularly that tantalizing aspect of it, the proper apportionment of punishment. Whatever views may be entertained regarding severity of punishment, whether one believes in its

15

efficacy or its futility . . . these are peculiarly questions of legislative policy. [*Id.* at 393.]

To summarize, at the time the 1963 Constitution was ratified, the United States Supreme Court had interpreted the language "same offense" in the Fifth Amendment to mean multiple punishments were authorized if "'each statute requires proof of an additional fact which the other does not . . . .'" *Blockburger, supra* at 304 (citation omitted). While there was no Michigan caselaw construing the language "same offense" as it applied to the "multiple punishments" strand of double jeopardy, our courts had defined the term "same offense" for purposes of successive prosecutions by applying the federal same-elements test.

## 2. POST-1963 CASELAW

The Court first addressed the "multiple punishments" strand of double jeopardy in *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976). In *Martin*, the defendant was convicted of both possession and delivery of the same heroin. The Court noted that while a defendant can be charged for each act that constitutes a separate crime, "when tried for an act which includes lesser offenses, if the jury finds guilt of the greater, the defendant may not also be convicted separately of the lesser included offense." *Id.* at 309. The Court found that possession of the heroin was a lesser included offense of its delivery because "[p]ossession of the heroin present in *this* case was that necessary to its delivery." *Id.* at 307 (emphasis in original). In other words, rather than focusing on the elements of the charged offenses, the Court focused on the facts of the particular case. While the Court

16

cited a similar analysis by the United States Court of Appeals for the First Circuit in *O'Clair v United States*, 470 F2d 1199, 1203 (CA 1, 1972), it failed even to cite *Blockburger,* let alone explain why the "same elements" test did not apply. Rather, the Court justified its approach by quoting with approval the Supreme Judicial Court of Maine in *State v Allen,* 292 A2d 167, 172 (Me, 1972), which held:

> The possession of narcotic drugs is an offense distinct from the sale thereof. But in the instant case the possession and sale clearly constituted one single and same act. The possession, as legally defined, is necessarily a constituent part of the sale, as legally defined. Where the only possession of the narcotic drug is that incident to and necessary for the sale thereof, and it does not appear that there was possession before or after and apart from such sale, the State cannot fragment the accused's involvement into separate and distinct acts or transactions to obtain multiple convictions, and separate convictions under such circumstances will not stand.

In *People v Stewart* (*On Rehearing*)*,* 400 Mich 540; 256 NW2d 31 (1977), the Court addressed the similar issue whether a defendant could be punished for the possession and sale of the same narcotic. The Court began its analysis by acknowledging that a defendant may possess a narcotic without selling it and, likewise, may sell a narcotic without possessing it. However, the Court again failed to acknowledge *Blockburger* and instead applied the fact-based approach of *Martin*, concluding that "from the evidence adduced at this trial, the illegal possession of heroin was obviously a lesser included offense of the illegal sale of heroin. When the jury in the case at bar found the defendant guilty of the illegal

17

sale of this heroin, they necessarily found him guilty of possession of the same heroin." *Id.* at 548 (emphasis deleted).

In *Wayne Co Prosecutor v Recorder's Court Judge*, 406 Mich 374; 280 NW2d 793 (1979), the Court addressed the question whether double jeopardy forbade separate convictions and sentences for felony-firearm, MCL 750.227b, and the underlying felony. The Court undertook this analysis by noting that the language of MCL 750.227b, defining the offense as a "felony" and requiring that the two-year sentence must be served "in addition to" the sentence for the underlying felony, demonstrated "that the Legislature intended to make the carrying of a weapon during a felony a separate crime and intended that cumulative penalties should be imposed." *Wayne Co Prosecutor, supra* at 391. In order to determine whether such an intention was consistent with the Double Jeopardy Clause, the Court then applied the "same elements" test from *Blockburger*. The Court observed that "[i]n applying the *Blockburger* rule, the United States Supreme Court has focused on the legal elements of the respective offenses, not on the particular factual occurrence which gives rise to the charges." *Id.* at 395. Applying *Blockburger,* the Court then determined that the felony at issue, second-degree murder, contained an element that felony-firearm did not, namely a killing committed with malice, and, likewise, that felony-firearm contained an element that second-degree murder did not, namely that the defendant carried or possessed a firearm during the commission of any felony.

18

Therefore, the Court concluded that the imposition of multiple punishments was not barred on double jeopardy grounds.[11] *Id.* at 397.

However, in *People v Jankowski*, 408 Mich 79; 289 NW2d 674 (1980), the Court reverted to the fact-based approach of *Martin* and *Stewart*. In *Jankowski*, the defendant was convicted of armed robbery, larceny over $100, and larceny in a building as the result of one felonious taking. The Court began its analysis by noting that, unlike in *Wayne Co Prosecutor,* there was no clear intention on the part of the Legislature that the crimes at issue be punished separately. The Court assessed the facts adduced at trial and determined that, because there was only one felonious taking, the larceny convictions constituted lesser offenses to the armed robbery conviction and therefore the larceny convictions were barred by double jeopardy.

The Court applied the same reasoning to first-degree felony murder and the predicate felony in *Wilder*. In *Wilder*, the defendant was convicted of both armed robbery and first-degree felony murder for a killing committed during the perpetration of that robbery. The Court began its analysis by noting that under the fact-based approach set forth in *Martin* and *Stewart*, if "the proof adduced at trial indicates that one offense is a necessarily or cognate lesser included offense of the

---

[11] The Court distinguished *Martin* and *Stewart* on the basis that "the Legislature has clearly expressed in the felony-firearm statute an intent to authorize multiple convictions and cumulative punishments." *Id.* at 402.

19

other, then conviction of both the offenses will be precluded." *Wilder, supra* at 343-344.  The Court held that because the evidence required to prove first-degree felony murder also requires proof of the armed robbery, armed robbery is a lesser offense of first-degree felony murder and therefore multiple punishments for each offense were barred by double jeopardy.[12]  The Court went on to explain that its approach to the "multiple punishments" strand of double jeopardy differed from the federal approach set forth in *Blockburger*:

> [T]he test concerning multiple punishment under our constitution has developed into a broader protective rule than that employed in the Federal courts.  Under Federal authority, the Supreme Court established the "required evidence" test enunciated in *Blockburger*[, *supra*]. See also its original expression in *Morey v Commonwealth*, 108 Mass 433 (1871). In *Blockburger*, the Court outlined their test:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." [*Blockburger, supra* at 304.]

> This approach isolates the elements of the offense as opposed to the actual proof of facts adduced at trial. See *Harris*[, *supra*]; *United States v Kramer*, 289 F2d 909, 913 (CA 2, 1961). Under this test, convictions of two criminal offenses arising from the same act are prohibited only when the greater offense necessarily includes all elements of the lesser offense. Accordingly, conviction of both offenses is precluded only where it is impossible to commit the greater offense without first having committed the lesser offense. From the perspective of lesser included offenses, the Supreme Court

---

[12] The Court acknowledged that "the elements of first-degree felony murder do not in every instance require or include the elements of armed robbery . . . ." *Id.* at 345.

in cases concerning double jeopardy has thus adhered to the common-law definition of such offenses. See *People v Ora Jones* [395 Mich 379, 387; 236 NW2d 461 (1975)].

The Federal test in *Blockburger* can thus be distinguished from this Court's approach in two principal ways. First, we find the proper focus of double jeopardy inquiry in this area to be the proof of facts adduced at trial rather than the theoretical elements of the offense alone. Proof of facts includes the elements of the offense as an object of proof. Yet, the actual evidence presented may also determine the propriety of finding a double jeopardy violation in any particular case. See [*Martin, supra; Stewart, supra*; *Jankowski, supra*].

Second, we have held that double jeopardy claims under our constitution may prohibit multiple convictions involving cognate as well as necessarily included offenses. [*Wilder, supra* at 348 n 10.]

Finally, in *Robideau,* the Court addressed the issue whether double jeopardy prohibits multiple punishments for convictions of both first-degree criminal sexual conduct, 750.520b(1)(c) (penetration under circumstances involving any "other felony"), and the underlying "other felony" of either armed robbery or kidnapping used to prove the charge of first-degree criminal sexual conduct. The Court undertook its analysis by noting that double jeopardy protection against multiple punishments constitutes a restraint on the courts, not the Legislature. The Court acknowledged that, where the intention of Congress is not clear, federal courts rely on *Blockburger* to determine whether Congress intended to permit multiple punishments. However, the Court rejected the *Blockburger* test, noting:

When applied in the abstract to the statutory elements of an offense, [the *Blockburger* test] merely serves to identify true lesser included offenses. While it may be true that the Legislature

ordinarily does not intend multiple punishments when one crime is completely subsumed in another, *Blockburger* itself is of no aid in making the ultimate determination. Although its creation of a presumption may make a court's task easier, it may also induce a court to avoid difficult questions of legislative intent in favor of the wooden application of a simplistic test. [*Robideau, supra* at 486.]

In place of *Blockburger*, the Court set forth "general principles" to be used when assessing legislative intention. Those principles include, but are not limited to, the following:

Statutes prohibiting conduct that is violative of distinct social norms can generally be viewed as separate and amenable to permitting multiple punishments. A court must identify the type of harm the Legislature intended to prevent. Where two statutes prohibit violations of the same social norm, albeit in a somewhat different manner, as a general principle it can be concluded that the Legislature did not intend multiple punishments. For example, the crimes of larceny over $ 100, MCL 750.356; MSA 28.588, and larceny in a building, MCL 750.360; MSA 28.592, although having separate elements, are aimed at conduct too similar to conclude that multiple punishment was intended.

A further source of legislative intent can be found in the amount of punishment expressly authorized by the Legislature. Our criminal statutes often build upon one another. Where one statute incorporates most of the elements of a base statute and then increases the penalty as compared to the base statute, it is evidence that the Legislature did not intend punishment under both statutes. The Legislature has taken conduct from the base statute, decided that aggravating conduct deserves additional punishment, and imposed it accordingly, instead of imposing dual convictions. [*Id.* at 487-488.]

The Court applied its new test by first looking to the maximum penalty available under each statute to determine whether the Legislature intended to permit multiple punishments. Where the Legislature designates a lower maximum penalty for the "lesser" crime than for the "greater" crime, the Court held that it

can be inferred that the Legislature did not intend multiple punishments. However, the Court held that the fact that first-degree criminal sexual conduct and the predicate offenses of armed robbery and kidnapping all carry a maximum penalty of life imprisonment served as evidence that the Legislature did intend multiple punishments there. Moreover, the Court found that the "social norm" the Legislature intended to protect by enactment of the criminal sexual conduct statute, i.e., protecting citizens against nonconsensual sexual penetration, would be poorly served by classifying the predicate felony as the "same offense" for double jeopardy purposes.

> If we were to conclude that only one conviction could result from fact situations such as the cases at bar, the result would be that the defendants, having completed the predicate felonies of kidnapping and robbery, could then embark on one of the most heinous crimes possible, with no risk either of a second conviction or a statutorily increased maximum sentence. [*Id.* at 490.]

The Court concluded therefore that under its test, the Legislature intended that first-degree criminal sexual conduct and the predicate felonies of armed robbery and kidnapping be punished separately.

### 3. *ROBIDEAU* AND THE RATIFIERS' UNDERSTANDING

*Robideau*'s creation of a new rule to determine whether two statutory offenses constitute the "same offense" for double jeopardy purposes was predicated on the Court's conclusions in previous cases that: (1) Michigan's Double Jeopardy Clause afforded greater protections than the Double Jeopardy Clause of the United States Constitution, *Wilder, supra* at 348 n 10; and (2) the

23

*Blockburger* test does not account for Michigan's then-current recognition of "cognate" lesser included offenses as "lesser offenses" under a fact-driven analysis. This conclusion that the Michigan Constitution affords greater protection than the Fifth Amendment has no basis in the language of Const 1963, art 1, § 15, the common understanding of that language by the ratifiers, or under Michigan caselaw as it existed at the time of ratification. Further, the concern expressed by the Court that *Blockburger* does not account for cognate lesser included offenses is no longer pertinent in light of *People v Cornell*, 466 Mich 335, 353; 646 NW2d 127 (2002).[13] Finally, nothing in the language of the constitution indicates that the ratifiers intended to give the term "same offense" a different meaning in the context of the "multiple punishments" strand of double jeopardy than it has in the context of the "successive prosecutions" strand. In the absence of any evidence that the term "same offense" was intended by the ratifiers to include criminal offenses that do not share the same elements, we feel compelled to overrule *Robideau* and preceding decisions that are predicated on the same error of law, and to hold instead that *Blockburger* sets forth the appropriate

---

[13] In *Cornell*, we held that an offense is an "offense inferior to that charged in the indictment" for purposes of MCL 768.32(1) when "'the lesser offense can be proved by the same facts that are used to establish the charged offense.'" *Cornell, supra* at 354 (citation omitted). In other words, an offense is the "same offense" for purposes of jury instructions if conviction of the greater offense necessarily requires conviction of the lesser offense.

test to determine whether multiple punishments are barred by Const 1963, art 1, §
15.[14]

We conclude that in adopting Const 1963, art 1, § 15, the ratifiers of our
constitution intended that our double jeopardy provision be construed consistently
with then-existing Michigan caselaw and with the interpretation given to the Fifth
Amendment by federal courts at the time of ratification. We further conclude that
the ratifiers intended that the term "same offense" be given the same meaning in
the context of the "multiple punishments" strand of double jeopardy that it has
been given with respect to the "successive prosecutions" strand. As we noted in
*Nutt, supra* at 594 (citation omitted), "'there is no authority, except *Grady* [*v
Corbin*, 495 US 508; 110 S Ct 2084; 109 L Ed 2d 548 (1990)], for the proposition
that [the Double Jeopardy Clause] has different meanings [in different contexts],'"
and that *Grady* has been specifically overruled by *United States v Dixon*, 509 US

---

[14] In deciding whether to overrule a precedent, we consider: (1) whether the
earlier decision was wrongly decided; and (2) whether practical, real-world
dislocations would arise from overruling the decision. *Robinson v Detroit*, 462
Mich 439, 464-466; 613 NW2d 307 (2000). As discussed earlier in this opinion,
we believe that *Robideau* and preceding decisions that are predicated on the same
error of law were wrongly decided because they are inconsistent with the common
understanding of "same offense." Moreover, we can discern no practical, real-
world dislocations or confusion that would arise from overruling *Robideau*. No
reasonable person, in reliance on *Robideau*, would commit additional felonies
during a criminal transaction in the hope that such additional criminal acts will not
be punished separately. Finally, and not insignificantly in our judgment, failing to
overrule *Robideau* would produce inconsistent rules regarding the meaning of the
language "same offense" in Const 1963, art 1, § 15.

688, 704; 113 S Ct 2849; 125 L Ed 2d 556 (1993). At the time of ratification, we had defined the language "same offense" in the context of successive prosecutions by applying the federal same-elements test. In interpreting "same offense" in the context of multiple punishments, federal courts first look to determine whether the Legislature expressed a clear intention that multiple punishments be imposed. *Missouri v Hunter*, 459 US 359, 368; 103 S Ct 673; 74 L Ed 2d 535 (1983); see also *Wayne Co Prosecutor, supra.* Where the Legislature does clearly intend to impose such multiple punishments, "'imposition of such sentences does not violate the Constitution,'" regardless of whether the offenses share the "same elements." *Id.* (citation and emphasis deleted). Where the Legislature has not clearly expressed its intention to authorize multiple punishments, federal courts apply the "same elements" test of *Blockburger* to determine whether multiple punishments are permitted. Accordingly, we conclude that the "same elements" test set forth in *Blockburger* best gives effect to the intentions of the ratifiers of our constitution.

## C. APPLICATION

We first conclude that the Court of Appeals erred in its double jeopardy analysis by comparing the first-degree felony murder conviction with the non-predicate felony of armed robbery.[15] There is no Michigan authority for the

---

[15] The Court of Appeals held that armed robbery was the "true" predicate felony in this case because "larceny is a necessarily included lesser offense of

(continued…)

robbery, and because, factually, there was no evidence that defendant committed separate offenses of robbery and larceny, defendant's armed robbery convictions violate double jeopardy protections." Slip op at 2. Similarly, Justice Kelly argues that the prosecutor's failure to distinguish between the property taken during the armed robbery and the property taken during the larceny establishes that there was not sufficient evidence to establish that defendant committed both crimes. *Post* at 4-5. However, as Justice Kelly acknowledges, the prosecutor's comments to the jury during closing argument do not constitute evidence. *People v Fields*, 450 Mich 94, 116 n 26; 538 NW2d 356 (1995). Rather, to determine whether there was sufficient evidence to sustain each of the instant convictions, this Court must review the evidence "in a light most favorable to the prosecution . . . and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt[.]" *People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979) (citations omitted). Here, the evidence adduced at trial demonstrates that after the murder, both victims were missing their wallets, the store's keys were missing, and money was missing from the cash drawer of the store. A reasonable juror could well conclude beyond a reasonable doubt that defendant stole the money, the keys, and the wallets. Further, a reasonable juror could well conclude that there were two separate takings of property in this case-- the keys and the money from the cash drawer (which belonged to the store) and the wallets and the cash from the victims. Thus, despite a lack of clarity by the prosecutor in his closing argument, when viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that defendant committed the separate offenses of armed robbery and larceny.

Nor are we persuaded by Justice Cavanagh that the Court's decision in *People v Wakeford,* 418 Mich 95, 112; 341 NW2d 68 (1983), supports the Court of Appeals conclusion that there was only one taking. In *Wakeford*, defendant robbed a market at gunpoint, forcing two separate cashiers to turn over the proceeds of their registers. Defendant claimed that his two convictions of armed robbery violated the Double Jeopardy Clause because each occurred during the same criminal transaction. This Court rejected that argument, noting that defendant assaulted and robbed two separate people and, therefore, could be held criminally liable for both. We also noted in dictum that, had this been a larceny charge, "the theft of several items at the same time and place constitutes a single larceny." *Id.* at 112. Justice Cavanagh seizes on this dictum to support his argument that, once the instant defendant was convicted of larceny, that conviction encompassed all of the property stolen in this case and that "no property remained

(continued…)

proposition that double jeopardy forbids the imposition of multiple punishments for felony murder and a non-predicate felony.[16] Therefore, the proper offenses to be analyzed under the *Blockburger* test are the felonies for which defendant was convicted-- first-degree felony murder and armed robbery.

Defendant's convictions of first-degree felony murder and the non-predicate armed robbery withstand constitutional scrutiny under the same-elements test. The elements of first-degree felony murder are: "'(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing,

<hr />

(…continued)

that could have been separately taken as part of an armed robbery." *Post* at 8. We disagree. In *Wakeford* there was a single victim from whom the defendant took multiple items. Thus, the dictum from *Wakeford* suggests that a defendant may not be convicted of multiple counts of larceny for different items taken from a single victim. However, in the instant case, there were *three different* victims-- the proprietor of the store, Putman, and Cummings. It cannot be the case that once a defendant engages in a larceny, the defendant is free to take property from anyone else in the immediate vicinity without fear of any additional punishment.

[16] Because armed robbery is not the predicate felony for the instant first-degree felony murders, we need not address *Wilder*'s holding that the constitution bars multiple punishments for first-degree felony murder and the predicate felony, or Justice Cavanagh's concern that *Blockburger* "has its limitations" in cases involving compound offenses. *Post* at 2. However, we note that the Court in *Wilder* based its holding on the fact that "double jeopardy claims under our constitution may prohibit multiple convictions involving cognate as well as necessarily included offenses." *Wilder, supra* at 349 n 10. *Wilder*'s focus on the "proof of facts adduced at trial," *id.,* seems questionable in light of the distinction

(continued…)

attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [MCL 750.316(1)(b), here larceny].'" *People v Carines*, 460 Mich 750, 758-759; 597 NW2d 130 (1999) (citation omitted). The elements of armed robbery are: (1) an assault; (2) a felonious taking of property from the victim's presence or person; and (3) while the defendant is armed with a weapon. *Id.* at 757. First-degree felony murder contains elements not included in armed robbery-- namely a homicide and a *mens rea* of malice. Likewise, armed robbery contains elements not necessarily included in first-degree felony murder-- namely that the defendant took property from a victim's presence or person while armed with a weapon. Accordingly, we conclude that these offenses are not the "same offense" under either the Fifth Amendment or Const 1963, art 1, § 15 and therefore defendant may be punished separately for each offense.

## IV. RESPONSE TO JUSTICE KELLY

Justice Kelly asserts that we have "systematically and drastically altered Michigan double jeopardy jurisprudence." *Post* at 12. In fact, our goal in interpreting provisions of our constitution is, and has always been, to give those provisions the meaning that the ratifiers intended. When the people ratified Const 1963, art 1, § 15, they understood that the term "same offense" would be

---

(…continued)
between cognate lesser offenses and lesser included offenses dictated by the Court in *Cornell*.

construed as it always had been under Michigan caselaw to that point, i.e., in a manner consistent with the interpretation of the federal constitution. This was a critical understanding at the time since the federal Double Jeopardy Clause had not yet been "incorporated" and applied against the states. See *Benton v Maryland*, 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969). Thus, the state Double Jeopardy Clause carried far greater independent significance than it does today, and the people took care to state their intentions about what it meant. These intentions must serve as the touchstone in determining the meaning of Michigan's Double Jeopardy Clause. However, in *White* and its progeny, this Court disregarded the intentions of the ratifiers and substituted its own judgments regarding how double jeopardy principles should apply in this state.

The Court began this process of judicial amendment in *White* when it abandoned the "same elements" test that had been recognized in this state for at least 60 years, *Ascher, supra* at 545, in favor of the "same transaction" test advocated by Justice Brennan in his *concurring* statement in *Ashe v Swenson*, 397 US 436, 448; 90 S Ct 1189; 25 L Ed 2d 469 (1970). While *White* extolled the virtues of the "same transaction" test and noted that it had been adopted by "many" other state courts, it failed to mention that the test had been explicitly *rejected* in both *Ascher* and *Townsend*. Moreover, the Court dismissed out of hand a statement made just one year earlier by the authoring justice in *White* that the question whether the "same transaction" test should be adopted was "properly

30

a decision for the Legislature and not for this Court." *People v Grimmett*, 388 Mich 590, 607; 202 NW2d 278 (1972). Thus, the Court dismissed the holdings of *Ascher, Townsend,* and *Grimmett,* each of which was consistent with the express intentions of the ratifiers, in order to pursue what *the Court* believed was the "only meaningful approach to the constitutional protection against being placed twice in jeopardy." *White, supra* at 257-258.

In *Cooper,* the Court continued to implement its own preferred policies in the realm of double jeopardy. The Court began its analysis by acknowledging that pre-1963 federal caselaw, specifically *Bartkus,* had held that when a defendant by one act violates the laws of two different sovereigns, double jeopardy does not bar the defendant's prosecution by both. Despite acknowledging that *Bartkus* remained good law, the Court hesitated to apply its rule, identifying an alleged "trend" away from the logical underpinnings of that decision. However, it also hesitated to adopt the defendant's position that the dual-sovereignty doctrine should be overruled in its entirety. Rather, the Court articulated a new "middle" position derived from a post-1963 decision of the Pennsylvania Supreme Court. Under this new rule, successive prosecutions by separate sovereigns were permissible only when "the interests of the State of Michigan and the jurisdiction which initially prosecuted are substantially different." *Cooper, supra* at 461. While the Court claimed that our constitution was the source of its authority for this new approach, it failed to cite *any* Michigan caselaw, and acknowledged that

31

its holding was based, at least in part, on "'some consideration [of] public policy.'" *Id.,* quoting *People v Beavers*, 393 Mich 554, 581; 227 NW2d 511 (1975) (Coleman, J., dissenting).

Thus, at the time *People v Nutt* was decided, this Court's double jeopardy jurisprudence had become largely unmoored from its constitutional foundation. In *White* and its progeny, the Court had disregarded the ratifiers' understanding of the phrase "same offense," and instead implemented a definition of the term that was consistent with its own ideas of "public policy." However, in *Nutt,* we recognized that it was the *ratifiers'* policy choices, and not those of the judiciary, which must govern our interpretation of the constitution. When *White* adopted the "same transaction" test, it acted contrary to the expressed intentions of the ratifiers that Michigan's Double Jeopardy Clause be interpreted in a manner consistent with the federal constitution, in accord with our then-existing caselaw. Therefore, in order to implement the policy determinations of the people, we overruled *White* and reinstated the meaning of the phrase "same offense" as it was understood by the ratifiers.

Likewise, in *People v Davis,* we recognized that the entire foundation for *Cooper*'s rejection of the dual-sovereignty doctrine had been its "detection of a trend" calling *Bartkus* into question. In fact, the opposite proved to be true and the United States Supreme Court later affirmed the dual-sovereignty doctrine in *Heath*. Because *Cooper* had been wrong about the status of federal double

32

jeopardy analysis at the time of ratification, its adoption of the Pennsylvania standard in dual-sovereignty cases became simply untenable. Rather, the correct standard-- that intended by the ratifiers-- is that a defendant who commits one criminal act that violates the laws of two different sovereigns has committed two different offenses for double jeopardy purposes. *Davis, supra* at 168.

Justice Kelly does not even purport to argue that *Robideau* can be maintained in light of *Nutt* and *Davis*.[17] Rather, Justice Kelly would apparently overrule all of our *existing* double jeopardy jurisprudence and return this Court to the days when it could safely disregard the intentions of the ratifiers, at least when such intentions conflicted with judicial preferences and assessments of public

---

[17] Justice Kelly "continue[s] to reject the majority's presumption that the voters of our state intended that Michigan's Double Jeopardy Clause should be interpreted exactly as the federal provision is interpreted." *Post* at 16. While it is understandable that Justice Kelly would continue to adhere to her dissenting position in *Nutt*, the majority opinion in that case nonetheless remains binding law. Yet, Justice Kelly does not even *attempt* to argue that *Robideau*, which is being overruled here, can somehow be harmonized with *Nutt*. Given Justice Kelly's impassioned opposition to our double jeopardy jurisprudence, and her statement that she would restore the law "*as it existed* before the instant majority began mangling it," *post* at 11 n 13 (emphasis added), one is naturally tempted to re-inquire, see *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 223-228 (2007) (Markman, J., concurring), whether the ongoing dispute between the majority and Justice Kelly over overrulings of precedent truly concerns attitudes toward stare decisis or merely attitudes toward particular previous decisions of this Court. As the accompanying chart to my concurrence in *Rowland* demonstrates, the majority in many of its overrulings of precedent also restored the law "as it existed" before the overruled precedent. Apparently, precedents can be disregarded only when Justice Kelly believes that the law has been "mangled," not when other justices believe this.

33

policy. The approach championed by Justice Kelly is simply incompatible with the paramount duty of the judiciary to construe the people's constitution to mean what the ratifiers intended it to mean. Moreover, in order to maintain *Robideau,* this Court would be required to hold that the term "same offense" means different things depending on which double jeopardy protection is at issue, a proposition that has no historical or textual basis. *Nutt*, *supra* at 594. Therefore, in order to restore Const 1963, art 1, § 15 to the meaning the ratifiers intended, *Robideau* must be overruled.

In addition to restoring the law to what the ratifiers of the constitution manifestly intended, we believe that by its double jeopardy decisions, this Court has also restored a more responsible criminal justice system than that urged by Justice Kelly. In particular, this Court's approach to double jeopardy will better ensure that criminal perpetrators be punished for *all*, not merely *some*, of their offenses; at the same time, it will make it more likely that policy and prosecutorial judgments assigned by our constitution to the legislative and executive branches are undertaken by those branches, rather than by the courts.

## V. CONCLUSION

We conclude that "same offense" in Const 1963, art 1, § 15 means the same thing in the context of the "multiple punishments" strand of double jeopardy as it does in the context of the "successive prosecutions" strand addressed by the Court in *Nutt.* The test set forth in *Robideau* for determining whether the Legislature

34

intended to permit multiple punishments is inconsistent with the understanding of the ratifiers of our constitution that Michigan's Double Jeopardy Clause be construed consistently with the Fifth Amendment and therefore *Robideau* must be overruled. We further conclude that the *Blockburger* same-elements test, as the reigning test in this Court in the context of the "successive prosecutions" strand and in the federal courts in the context of the "multiple punishments" strand in 1963, effectuates the intentions of the ratifiers. Because each of the felonies of which defendant was convicted, first-degree felony murder and armed robbery, has an element that the other does not, they are not the "same offense" under either Const 1963, art 1, § 15 or US Const, Am V. Accordingly, we reverse the part of the judgment of the Court of Appeals that vacated the armed robbery convictions and sentences and two of the felony-firearm convictions and sentences, and remand this case to the trial court to reinstate defendant's convictions and sentences for armed robbery and the accompanying felony-firearm convictions and sentences.

> Stephen J. Markman
> Clifford W. Taylor
> Maura D. Corrigan
> Robert P. Young, Jr.

Weaver, J. I concur in all except part IV.

> Elizabeth A. Weaver

35

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellant,

v             No. 130353

BOBBY LYNELL SMITH,

   Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

   Today the majority adopts the "same elements" test set forth in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932), to determine what comprises "multiple punishments" under Michigan's Double Jeopardy Clause, Const 1963, art 1, § 15.  Because I believe that the *Blockburger* test is not always sufficient to enforce double jeopardy protections, I must respectfully dissent.

   The Double Jeopardy Clause in both the Michigan Constitution and the United States Constitution protects against both successive prosecutions and multiple punishments for the "same offense."[1]  In the multiple punishment context, the Double Jeopardy Clause ensures that a defendant's total punishment

---

[1] Const 1963, art 1, § 15; US Const, Ams V and XIV.

will not exceed the punishment authorized by the Legislature. *People v Whiteside*, 437 Mich 188, 200; 468 NW2d 504 (1991). The United States Supreme Court has characterized the *Blockburger* test as a "rule of statutory construction" that it has "relied on . . . to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively." *Whalen v United States*, 445 US 684, 691; 100 S Ct 1432; 63 L Ed 2d 715 (1980).[2] But simply applying the *Blockburger* test does not end the inquiry. "The *Blockburger* test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Albernaz v United States*, 450 US 333, 340; 101 S Ct 1137; 67 L Ed 2d 275 (1981). Thus, the *Blockburger* test is not an end in itself; it merely assists in determining the Legislature's intent regarding the appropriate punishment for multiple offenses.

The use of *Blockburger* alone has its limitations, particularly in cases involving a compound offense, such as felony murder. The *Blockburger* test does not always recognize the relationship between a compound offense and its predicate offenses. For example, when comparing the abstract elements of felony

---

[2] While the legislative body has the exclusive power to define offenses and fix punishments, there remain "constitutional limitations upon this power." *Whalen*, *supra* at 689 n 3.

murder and one of its predicate felonies, the offenses will be deemed separate offenses under the *Blockburger* test. But to convict a defendant of felony murder, the prosecution must establish that the defendant committed the underlying felony. Accordingly, the predicate offense to a felony-murder charge is a necessary element of felony murder, and conviction of both would violate double jeopardy.

When applying the *Blockburger* test to compound offenses, it is essential to account for the necessarily included predicate offense rather than limiting the inquiry to the abstract elements of the compound offense. We recognized this requirement when we held that double jeopardy analysis for compound offenses relies "not upon the theoretical elements of the offense but upon proof of facts actually adduced." *People v Wilder*, 411 Mich 328, 346; 308 NW2d 112 (1981). Similarly, when the United States Supreme Court applied *Blockburger* to the District of Columbia felony-murder statute, it held that multiple prosecutions for felony murder and the predicate offense of rape were barred even though the felony murder statute does not *always* require proof of rape, but could also be based on robbery, arson, or kidnapping, among other offenses. *Whalen*, *supra* at 694. The Court noted that "[i]n the present case, however, proof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense." *Id.* Accordingly, the Court

3

"concluded that, for purposes of imposing cumulative sentences under [the felony-murder statute], Congress intended rape to be considered a lesser offense included within the offense of a killing in the course of rape." *Id.* at n 8. In sum, both Michigan and federal courts consider a predicate offense to be necessarily included within a compound offense, even if the abstract elements of the compound offense do not, in every case, encompass the elements of the predicate offense.

Applying the "same elements" test of *Blockburger*, the majority concludes that defendant's convictions for felony murder based on larceny and the non-predicate offense of armed robbery survive constitutional scrutiny. *Ante* at 27-28. But the majority errs in only comparing the abstract elements of felony murder and armed robbery. Under *Wilder* and federal law, felony murder and its predicate offense are the "same offense" for double jeopardy purposes because the felony-murder conviction necessarily includes all the elements of the predicate offense. The majority fails to account for the necessarily included elements of the predicate offense. Here, defendant's prosecution for felony murder necessarily put him "in jeopardy" of a conviction of larceny as a lesser included offense. Accordingly, the relevant comparison is between the offense of larceny and armed robbery. It is well established that larceny is a lesser included

4

offense of armed robbery.[3] *People v Jankowski*, 408 Mich 79, 92; 289 NW2d

674 (1980), disavowed on other grounds, *People v Wakeford*, 418 Mich 95, 111

(1983). As such, a defendant cannot be subjected to multiple prosecutions for

both larceny and armed robbery. "Whatever the sequence may be, the Fifth

Amendment forbids successive prosecution and cumulative punishment for a

greater and lesser included offense." *Brown v Ohio*, 432 US 161, 169; 97 S Ct

2221; 53 L Ed 2d 187 (1977). Defendant's convictions for armed robbery must

be vacated in light of his convictions for felony murder with a predicate offense

of larceny.

---

[3] MCL 750.356(1) defines "larceny" in relevant part as follows: "A person who commits larceny by stealing any of the following property of another person is guilty of a crime as provided in this section: (a) Money, goods, or chattels."

The armed robbery statute, MCL 750.529, provides in relevant part:

> A person who engages in conduct proscribed under section 530 and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.

And § 530(1) states:

> A person who, in the course of committing a *larceny* of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years. [MCL 750.530 (emphasis added).]

5

It is also important that we keep in mind the fundamental purpose of engaging in the *Blockburger* test—to discern legislative intent. If the Legislature did not intend to impose cumulative punishments for felony murder and its predicate offense, it would follow that it did not intend to impose multiple punishments for felony murder and offenses that entirely encompass the predicate offense. The legislative intent to impose only one punishment for committing felony murder would also apply to lesser and greater included offenses of the predicate offense. This is particularly true in the present case, which features a noteworthy relationship between the offense of felony murder and the non-predicate offense of armed robbery. Here, defendant could have been prosecuted for felony murder with a predicate felony of armed robbery rather than larceny. Had that occurred, it would have been even more apparent that a simultaneous larceny conviction would violate double jeopardy principles because larceny is a lesser included offense of armed robbery and there was no evidence of separate takings. The government should not be permitted to evade the prohibition against double jeopardy by manipulating the charges it brings against a defendant. Such maneuvering demonstrates the very governmental overreaching that the double jeopardy provision is intended to prevent.

In sum, comparing abstract elements does not adequately enforce the constitutional protection against double jeopardy, particularly in cases involving compound offenses. Comparing the elements of two offenses may indicate

6

whether the Legislature intended to impose cumulative punishments, but it does not serve as an exclusive method for determining whether the Double Jeopardy Clause has been violated. The majority's application of *Blockburger* threatens to undermine the protections against double jeopardy guaranteed by the Michigan Constitution and safeguarded by *Wilder*.

Additionally, the majority contends that the evidence adduced at trial could have supported a finding that two takings occurred—the store's keys and money in a larceny and the victims' wallets in an armed robbery. *Ante* at 26 n 15. But we have not permitted the offense of larceny to be divided this way. "[T]he theft of several items at the same time and place constitutes a single larceny. . . . The appropriate 'unit of prosecution' for larceny is the taking at a single time and place without regard to the number of items taken . . . ." *Wakeford*, *supra* at 112.[4] By contrast, "the appropriate 'unit of prosecution' for

---

[4] We recognized the "single larceny" doctrine in *People v Johnson*, 81 Mich 573, 576-577; 45 NW 1119 (1890). In *Johnson*, we held that the theft of property belonging to two different owners comprised a single larceny because the property was taken at the same time from one granary. *Id.* at 577. *Wakeford* discusses this doctrine in the process of discerning the Legislature's intent regarding multiple punishments for armed robbery. Our discussion was not merely dictum because the defendant argued that armed robbery of multiple victims at the same time should be treated the same as larceny; thus, we needed to explain why the armed robbery statute did not convey the same intent regarding multiple punishment as the larceny statute. *Wakeford*, *supra* at 111-112. Justice Markman attempts to distinguish *Wakeford* by stating that "[i]n *Wakeford* there was a single victim from which the defendant took multiple items," *ante* at 26 n 15, but there is no indication that we would have come to a different conclusion

(continued…)

armed robbery is the person assaulted and robbed." *Id.* When defendant was found guilty of all the elements of larceny, that offense involved *all* the property that was taken in this case.[5] Consequently, after defendant was found guilty of larceny, no property remained that could have been separately taken as part of an armed robbery. The Court of Appeals was correct to conclude that there was no factual basis supporting separate offenses of larceny and armed robbery.

Vacating defendant's armed robbery convictions and related convictions of possession of a firearm during the commission of a felony is necessary to enforce the prohibition against double jeopardy. I would affirm the result reached by of the Court of Appeals.

Michael F. Cavanagh

---

(…continued)
regarding larceny if the defendant had taken property belonging to multiple owners rather than just from multiple cashiers.

[5] Of course, having committed a larceny, a defendant is not free to take property from other owners without fear of additional punishment. Under the larceny statute, the value of the property taken is totaled to distinguish between
(continued…)

(…continued)
misdemeanor and felony larceny and to determine the level of punishment. MCL
750.356.

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                                                    No. 130353

BOBBY LYNELL SMITH,

      Defendant-Appellee.

_____

KELLY, J. (*dissenting*).

Regrettably, the majority has again unnecessarily chipped away at the Double Jeopardy Clause of the Michigan Constitution. Therefore, I must dissent.

The record in this case contains no evidence that defendant committed the separate offenses of robbery and larceny. For that reason, the Court of Appeals was correct in concluding that defendant's convictions and sentences for both armed robbery and felony murder, with the predicate offense being larceny, violated Michigan's Double Jeopardy Clause.

Additionally, the majority has unnecessarily overruled the test for the multiple-punishment strand of double jeopardy that this Court set forth in *People v Robideau,* 419 Mich 458; 355 NW2d 592 (1984). I believe that *Robideau* provides the appropriate protection against multiple punishments in Michigan.

Therefore, I must also object to the majority's decision to overrule it and to the majority's continuing disregard for the rule of stare decisis.

THE FACTS

On January 7, 2003, store owner Richard Cummings and employee Stephen Putman died from gunshot wounds. During the criminal investigation, the police discovered that $2,000 in cash was missing from the store, in addition to the store's cash proceeds from that morning. Also missing were the wallets of both victims, the money Cummings carried in his front pocket, and a set of keys to the store. Ultimately, after a jury trial, defendant was convicted of two counts of first-degree felony murder,[1] with larceny as the predicate felony; two counts of armed robbery;[2] and four counts of possession of a firearm during the commission of a felony.[3]

Defendant appealed, arguing that his convictions for both felony murder and armed robbery violated constitutional double jeopardy protections. *People v Smith*, unpublished opinion per curiam of the Court of Appeals, issued December 27, 2005 (Docket No. 257353). The Court of Appeals agreed and vacated the armed robbery convictions and the corresponding felony-firearm convictions, as well as the sentences for those convictions. The Court specifically noted that

---

[1] MCL 750.316(1)(b).
[2] MCL 750.529.
[3] MCL 750.227b.

2

"[b]ecause larceny is a necessarily included lesser offense of robbery, and because, factually, there was no evidence that defendant committed separate offenses of robbery and larceny, defendant's armed robbery convictions violate double jeopardy." *Id.,* slip op at 2. The prosecution sought leave to appeal in this Court, contending that the Court of Appeals erred in its double jeopardy analysis.

INSUFFICIENT EVIDENCE

A majority of this Court concludes that the Court of Appeals erred in its double jeopardy analysis by comparing the felony-murder conviction to the non-predicate felony of armed robbery. According to the majority, because armed robbery was not the predicate felony involved in the felony-murder conviction, reversal is not required pursuant to *People v Wilder*, 411 Mich 328; 308 NW2d 112 (1981). I disagree with the majority's conclusion. Rather, I believe that the Court of Appeals correctly concluded that there was no evidence that defendant committed the separate offenses of robbery and larceny.

In his opening statement, the prosecutor argued to the jury that defendant took the following items: Putman's wallet, Cummings's cash, Cummings's wallet, the keys to the store, and the cash from the cash register. The prosecutor also explained that, in order to prove felony murder, all he had to show was (1) that defendant murdered Cummings and Putman, (2) that he did it with malice, and (3) that he was attempting a larceny at the time he committed the murders.

3

With regard to the armed robbery, the prosecutor explained that he had to prove that defendant committed robbery with a gun.

In his closing statement, the prosecutor summarized for the jury what he believed the evidence showed. Specifically, with regard to the armed robbery, the prosecutor noted (1) that defendant took the keys and (2) that money was taken from several locations, including Cummings's front pocket, the men's wallets, and the cash drawer. With regard to felony murder, the prosecutor argued that defendant caused the deaths of Cummings and Putman. He said that, when defendant caused their deaths, defendant had the intent either to kill the victims or to do them great bodily harm. With regard to the predicate offense of larceny, the prosecutor explained that, if defendant "was either stealing or attempting to steal at the time he killed these two men, which we have shown, he is guilty as charged of both counts of Felony Murder."

Although a prosecutor's comments are not evidence, they are intended to summarize the evidence put before the jury. Clearly, the prosecutor in this case did not distinguish between the separate acts of armed robbery and larceny. Rather, he treated the two crimes as interchangeable and failed to identify the items stolen with the individual crimes. In fact, when restating the items that defendant allegedly stole during the armed robbery, the prosecutor named all the stolen items.

However, if defendant stole all the items during the armed robbery, none remained to be stolen during the larceny. In order to satisfy the predicate offense of larceny, the prosecutor stated that he had already shown that defendant was either stealing or attempting to steal from the two men. However, when he made that assertion, the prosecutor was referring to the proofs he had just discussed with regard to the armed robbery. Accordingly, the Court of Appeals correctly concluded that there was no evidence that defendant committed both armed robbery and larceny.

The majority notes that a reasonable juror could have concluded that there were two separate takings: the money from the cash drawer and the wallets from the victims. However, the prosecutor did not make this distinction. Moreover, the facts of this case should not be read in a vacuum. In making the distinction it does, the majority is essentially acting as a super-prosecutor and a thirteenth juror.

The Court of Appeals correctly concluded that there was insufficient evidence of two takings, and that defendant was convicted of both felony murder and the predicate felony. As the Court noted, it is well established that convictions and sentences for both felony murder and the predicate felony for felony murder violate double jeopardy. *Wilder*, 411 Mich at 345-347. The proper remedy is to vacate the conviction and sentence for the underlying felony. Accordingly, I would affirm the Court of Appeals judgment and vacate

5

defendant's two convictions for armed robbery and the corresponding two convictions for felony-firearm, as well as the sentences for those convictions.[4]

THE DOUBLE JEOPARDY ISSUE

It is unnecessary in this case for the Court to choose whether the proper test for determining if a double jeopardy violation has occurred is set forth in *Blockburger*[5] or *Robideau*. However, the majority takes this step, and I state my strong disagreement. *Robideau* should not be overruled.

The Double Jeopardy Clause of the Michigan Constitution,[6] provides: "No person shall be subject for the same offense to be twice put in jeopardy." Similarly, the Double Jeopardy Clause of the United States Constitution[7] provides: "No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ."[8]

The Double Jeopardy Clause primarily offers three protections: it protects against (1) a second prosecution for the same offense after acquittal, (2) a second

---

[4] The majority notes that its approach to double jeopardy will better ensure that criminal perpetrators be punished for *all*, not merely *some*, of their offenses. A telling flaw that I find with the majority's approach is that, in its zeal, it will at times punish a defendant twice for the same offense.

[5] *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

[6] Const 1963, art 1, § 15.

[7] US Const, Am V.

6

prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Robideau*, 419 Mich at 468, citing *North Carolina v Pearce*, 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

The first two protections are commonly referred to as the "successive prosecution" strand, and the third protection is commonly referred to as the "multiple punishment" strand. According to the majority, the instant case concerns the third protection. As noted in *Robideau*, "[t]he Double Jeopardy Clause prohibits a court from imposing more punishment than that intended by the Legislature." *Robideau*, 419 Mich at 469. Accordingly, "'the question under the Double Jeopardy Clause whether punishments are "multiple" is essentially one of legislative intent . . . .'" *Id.*, quoting *Ohio v Johnson*, 467 US 493, 499; 104 S Ct 2536; 81 L Ed 2d 425 (1984).

RECENT CHANGES IN MICHIGAN'S DOUBLE JEOPARDY JURISPRUDENCE

It should be noted that there are few areas of the law in which the current Michigan Supreme Court majority has altered state law more than in double jeopardy jurisprudence. Ten years after the 1963 Michigan Constitution was ratified, this Court decided *People v White*, 390 Mich 245; 212 NW2d 222 (1973).

---

(…continued)

[8] In *Benton v Maryland*, 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969), the United States Supreme Court held that the federal Double Jeopardy Clause was applicable to actions by the states.

7

There, the Court held that the "same transaction" test should be used to determine if serial prosecutions violate the state constitution's double jeopardy provision. *Id.*

Thirty years later, the majority of this Court[9] overruled *White* and instead adopted the "same elements" test, also referred to as the *Blockburger* test. *People v Nutt*, 469 Mich 565; 677 NW2d 1 (2004). Specifically, the majority in *Nutt* concluded that, in adopting the Michigan Double Jeopardy Clause, "the people of this state intended that our double jeopardy provision would be construed consistently with Michigan precedent and the Fifth Amendment." *Id.* at 591. Accordingly, because federal courts used the same-elements test in interpreting the term "same offence" under the federal constitution, this Court likewise adopted the same-elements test. *Id.* at 576, 592.

The dissent in *Nutt*[10] rejected the majority's application of the same-elements test and noted that it "is not as entrenched in federal jurisprudence as the majority claims." *Id.* at 597 (Cavanagh, J., dissenting). The dissent noted that the United States Supreme Court has used other tests, because it recognized that the same-elements test is not an adequate safeguard to protect a citizen's double jeopardy rights. *Id.* at 598-599, citing *Ashe v Swenson*, 397 US 436, 443-444, 447; 90 S Ct 1189; 25 L Ed 2d 469 (1970), *Ball v United States*, 470 US 856, 105

[9] Justice Young wrote the majority opinion, which was signed by then-Chief Justice Corrigan and Justices Weaver, Taylor, and Markman.

[10] Justice Cavanagh wrote the dissent and I signed it, as well.

8

S Ct 1668, 84 L Ed 2d 740 (1985), *In re Nielson*, 131 US 176; 9 S Ct 672, 33 L Ed 118 (1889), *Harris v Oklahoma*, 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977), and *Brown v Ohio*, 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977).

Specifically, the dissent noted that a technical comparison of the elements is neither constitutionally sound nor easy to apply. *Nutt*, 469 Mich at 600. Essentially, the dissent opined that the same-elements test is nothing more than a method that can be used to interpret statutes. *Id.* at 598, citing *Albernaz v United States*, 450 US 333, 340; 101 S Ct 1137; 67 L Ed 2d 275 (1981).

In a similar vein, in 1976, this Court decided *People v Cooper*, 398 Mich 450; 247 NW2d 866 (1976). In *Cooper,* the defendant was acquitted in federal court, then tried in state court on charges for the same criminal act. *Id*. at 453. The issue was whether his right to be free from double jeopardy under either the Michigan or United States Constitution had been violated. *Id*. We held that "Const 1963, art 1, § 15 prohibits a second prosecution for an offense arising out of the same criminal act unless it appears from the record that the interests of the State of Michigan and the jurisdiction which initially prosecuted are substantially different." *Id.* at 461.

Again, nearly 30 years later, the same majority of the Michigan Supreme Court that overruled *White* in *Nutt* overruled *Cooper* in *People v Davis*, 472 Mich

9

156; 695 NW2d 45 (2005).[11] The majority in *Davis* relied on its analysis in *Nutt* for this proposition: The double jeopardy provision of the Michigan Constitution should be construed consistently with that of federal double jeopardy jurisprudence that existed at the time the 1963 Michigan Constitution was ratified. *Id.* at 168. Accordingly, applying federal double jeopardy jurisprudence, the majority in *Davis* concluded that the Michigan Double Jeopardy Clause did not bar the defendant's successive prosecutions in Michigan and Kentucky. *Id.* at 158. The reason was that the states are separate sovereigns deriving their authority to punish from distinct sources of power. *Id.*

I dissented in *Davis*.[12] My dissent reviewed this state's common-law history before we became a state, our constitutional history, and the language of the Address to the People before the constitution was ratified in 1963. It rejected the majority's claim that the voters of our state intended that Michigan's Double Jeopardy Clause be interpreted exactly as the federal provision is interpreted. *Id.* at 182 (Kelly, J., dissenting). I also noted that *Cooper* properly relied on the

---

[11] Justice Weaver wrote the majority opinion, which was signed by Chief Justice Taylor and Justices Corrigan, Young, and Markman.

[12] Justice Cavanagh concurred with my dissent. *Id.* at 191 (Cavanagh, J., dissenting).

10

Michigan Constitution, and that the *Cooper* rule was necessary to protect the individual's and the state's respective interests. *Id.* at 184.[13]

Finally, we come to the instant case. In 1984, this Court decided *Robideau* and specifically addressed the multiple-punishment strand of Michigan's Double Jeopardy Clause. The Court noted that, although the United States Supreme Court had adopted the *Blockburger* same-elements test, the United States Supreme Court's treatment of issues of multiple punishment suggested a struggle to set forth a single standard. *Robideau*, 419 Mich at 479.

Turning to Michigan caselaw, *Robideau* concluded that Michigan's double jeopardy analysis had been no more consistent than federal double jeopardy analysis. *Id.* at 484. In deciding the appropriate test to use in Michigan, this Court explicitly rejected the *Blockburger* test. *Id.* at 485-486. Specifically, it stated that, although *Blockburger*'s "creation of a presumption may make a court's task easier, it may also induce a court to avoid difficult questions of legislative intent in favor of the wooden application of a simplistic test." *Id.* at 486. Instead, this Court used the traditional means of determining legislative intent: the subject, language, and history of the statutes. *Id.* at 486.

---

[13] The majority claims that I would overrule all of the existing double jeopardy jurisprudence. This is inaccurate. My concern is simply with the majority's contributions to our double jeopardy jurisprudence. In that regard, I have consistently dissented. As I noted in my dissents in *Davis*, *Nutt*, and in this case, I would have upheld Michigan's double jeopardy jurisprudence as it existed before the instant majority began mangling it.

(continued…)

11

Now, more than 20 years after *Robideau* was decided, the same majority that overturned *White* and *Cooper* overturns *Robideau*. Relying once again on its analysis in *Nutt*, the majority holds that *Blockburger* set forth the proper test to determine when multiple punishments are barred on double jeopardy grounds.

It is beyond argument that the majority of this Court has systematically and drastically altered Michigan double jeopardy jurisprudence. For nearly 30 years, this Court applied *White* to cases involving successive prosecutions and *Cooper* to cases involving two sovereigns. For more than 20 years, this Court applied *Robideau* to cases involving multiple punishments. However, in rapid succession, the majority of this Court has discarded each of these precedents and created its own double jeopardy jurisprudence.

I dissented in *Nutt* and *Davis* because I did not agree that *White* and *Cooper* should have been overturned. Today, I again dissent because I do not agree that *Robideau* should be overturned.

THE *ROBINSON*[14] FACTORS

A. WHETHER THE CASE WAS WRONGLY DECIDED

This Court laid out the factors to consider in departing from the rule of stare decisis in the *Robinson* case: (1) whether the earlier decision was wrongly decided, (2) whether the decision at issue defies "practical workability," (3)

_____

(…continued)

12

whether reliance interests would work an undue hardship if the authority is overturned, and (4) whether changes in the law make the decision no longer justified. *Robinson*, 462 Mich at 464.[15]

First, I believe *Robideau* was correctly decided. In *Robideau*, this Court exhaustively reviewed federal caselaw concerning double jeopardy. *Robideau*, 419 Mich at 472-480. After concluding that federal jurisprudence offered no concrete guidance, this Court exhaustively reviewed Michigan caselaw concerning Michigan's Double Jeopardy Clause. *Id.* at 480-484. Similarly, this Court found that Michigan's double jeopardy analysis had not been consistent. *Id.* at 484.

This Court noted that it had concluded in *White* that the transactional approach was the correct standard to use with regard to successive prosecutions. *Id.* at 485. However, because different interests were involved, a different standard was needed for cases involving multiple punishments. *Id.* Accordingly, after conducting an extensive caselaw analysis, this Court explicitly rejected the *Blockburger* test, preferring instead traditional means of determining the intent of the Legislature: the subject, language, and history of the statutes. *Id.* at 486.[16]

---

(…continued)

[14] *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000).

[15] It is worth noting that the same majority that overrules *Robideau* today set forth in *Robinson* the test for departing from the rule of stare decisis. Notwithstanding the fact that it created this test, the majority pays little attention to it and instead goes through the *Robinson* factors in a footnote.

[16] Specifically, this Court set forth a nonexhaustive list of considerations:

(continued…)

13

*Robideau* was based on the Michigan Constitution and Michigan caselaw. The test in *Robideau* adequately safeguards a Michigan citizen's right to be free from multiple punishments for the same offense. As noted in *Robideau*, when multiple punishments are involved, the Double Jeopardy Clause is a restraint on the prosecution and the courts, not on the Legislature. *Id.* at 469. The test in *Robideau* assures that the defendant does not receive more punishment than intended by the Legislature. Accordingly, it adequately protects the double jeopardy rights of Michigan citizens.

Moreover, the *Robideau* Court was free to use its own preferred methods of ascertaining judicial intent. As noted repeatedly throughout *Robideau*, the *Blockburger* test is simply a method for determining legislative intent. *Robideau*, 419 Mich at 473, 478, citing *Gore v United States*, 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405 (1958) (stressing that *Blockburger* was decided as a matter of legislative intent), and *Albernaz,* 450 US at 338 (noting that the *Blockburger* test

---

(…continued)

> Statutes prohibiting conduct that is violative of distinct social norms can generally be viewed as separate and amenable to permitting multiple punishments. A court must identify the type of harm the Legislature intended to prevent. Where two statutes prohibit violations of the same social norm, albeit in a somewhat different manner, as a general principle it can be concluded that the Legislature did not intend multiple punishments. . . .

(continued…)

14

was merely a means to determine legislative intent and that the presumption created by the *Blockburger* test could be rebutted by a clear indication of legislative intent to the contrary).

I believe this is the proper lens through which to view *Blockburger*: It is simply one of many methods by which a court can discern the Legislature's intent. It is not a definitive test that should, or could, be used in every case. Indeed, as noted by this Court in *Robideau*, "it would be quite contrary to established principles of federalism for the United States Supreme Court to impose on the states the method by which they must interpret the actions of their own legislatures." *Robideau*, 419 Mich at 486. Accordingly, the *Robideau* Court was within its authority to reject the *Blockburger* test and instead fashion a test that properly reflected the protections of the Michigan Constitution.

The majority believes that the constitution's ratifiers intended our double jeopardy provision to be construed consistently with the interpretation given the Fifth Amendment by federal courts at the time of ratification. I disagree. As I noted in my dissent in *Davis*, the sole concern in revisiting the Double Jeopardy Clause in our state constitution was to clarify that jeopardy attaches when a jury is

---

(…continued)

> A further source of legislative intent can be found in the amount of punishment expressly authorized by the Legislature. [*Robideau*, 419 Mich at 487.]

15

sworn, as our courts had interpreted. *Davis,* 472 Mich at 181 (Kelly, J., dissenting).

In *Davis*, I also rejected the majority's claim that the people of Michigan intended to adopt the federal interpretation of the Double Jeopardy Clause. *Id.* Specifically, I did not agree with the majority that the ratifiers knew how the United States Supreme Court had interpreted the federal Double Jeopardy Clause and that they accepted it. *Id.* I did not agree that the ratifiers were willing to allow the federal government to interpret our constitution for us. *Id.* I continue to believe that my analysis in *Davis* was correct. Therefore, I continue to reject the majority's presumption that the voters of our state intended that Michigan's Double Jeopardy Clause be interpreted exactly as the federal provision is interpreted.

The majority overturns *Robideau* also in the belief that the Michigan Constitution does not afford greater protections than does the Fifth Amendment of the United States Constitution. As an initial matter, I would note that the *Robideau* Court did not expressly base its decision on this assertion. Regardless, this Court has, for decades, determined that our constitutional prohibition against double jeopardy affords greater protection than does the Fifth Amendment. See, e.g., *Robideau*, 419 Mich at 507 n 5 (Cavanagh, J., dissenting), citing *People v Wakeford*, 418 Mich 95, 105 n 9; 341 NW2d 68 (1983), *People v Carter*, 415 Mich 558, 582-584; 330 NW2d 314 (1982), *Wilder*, 411 Mich at 343-349, *People*

16

*v Jankowski*, 408 Mich 79, 91-92, 96; 289 NW2d 674 (1980), and *White*. Accordingly, for the reasons I have stated, I continue to believe *Robideau* was correctly decided.

## B.  PRACTICAL WORKABILITY PROBLEMS

The next *Robinson* factor to consider is whether the decision at issue defies "practical workability." *Robinson*, 462 Mich at 464.  I do not believe that it does.  In interpreting statutes, courts are charged with the responsibility to determine the Legislature's intent in writing such statutes.  *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999).  *Robideau* set forth a nonexhaustive list of factors a court could consider in determining legislative intent.  I believe that the test set forth in *Robideau* is workable.  It is no more difficult to apply than any other method that this Court uses to discern the Legislature's intent.

The majority adopts the *Blockburger* test.  However, as indicated by the *Robideau* Court, the *Blockburger* test is not an easy test to apply consistently.  This Court noted that, among other difficulties that arise from the application of the *Blockburger* test, it "fails to recognize that the Legislature does not always create crimes in neat packages which are susceptible to a pure greater and lesser included offense analysis." *Robideau*, 419 Mich at 487 n 6.  Moreover, the *Blockburger* test "may also induce a court to avoid difficult questions of legislative intent in favor of the wooden application of a simplistic test." *Id.* at 486.  The difficulty in applying *Blockburger* is one of the reasons, if not the main reason, this Court specifically declined to adopt the *Blockburger* test.

In *Nutt*,[17] the dissent noted that the *Blockburger* test is an inadequate safeguard because it leaves the constitutional guarantee at the mercy of the Legislature's decision to modify statutory definitions. *Nutt*, 469 Mich at 600, quoting *United States v Dixon,* 509 US 688, 735; 113 S Ct 2849; 125 L Ed 2d 556 (1993) (White, J., dissenting). Therefore, it is the *Blockburger* test, not the *Robideau* test, that defies practical workability.

## C. HARDSHIP BECAUSE OF RELIANCE

The next *Robinson* factor to consider is whether, if the decision were overturned, reliance interests would work an undue hardship. *Robinson,* 462 Mich at 464. "[T]he Court must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations." *Id*. at 466. Overturning *Robideau* would work an undue hardship. As indicated above, Michigan courts have followed the test for more than 20 years. It has become a fundamental part of Michigan double jeopardy jurisprudence.

## D. CHANGES IN THE LAW

The final *Robinson* factor is whether changes in the law make the decision no longer justified. *Id.* at 464. There has been no change in Michigan's Double Jeopardy Clause, and the test set forth in *Robideau* has been applied since its inception in 1984.

---

[17] 469 Mich at 565 (Cavanagh, J., dissenting).

The majority notes that the concern expressed by this Court in *Robideau* that *Blockburger* does not account for cognate lesser-included offenses is no longer pertinent in light of *People v Cornell*, 466 Mich 335, 353; 646 NW2d 127 (2002). As an initial matter, the *Robideau* Court's reasoning was much more diverse than the majority implies. The *Robideau* Court did not reject the *Blockburger* test solely because it did not account for cognate lesser-included offenses. Rather, this Court noted that federal double jeopardy jurisprudence was inconsistent and that *Blockburger* was difficult to apply.

Regardless, in *Cornell*, the same majority that overturned *White, Cooper,* and now *Robideau* held that an offense is an "offense inferior to that charged in the indictment" for purposes of MCL 768.32(1) when "'the lesser offense can be proved by the same facts that are used to establish the charged offense.'" *Id.* at 354-355 (citation omitted).

I dissented in *Cornell* and noted that, in coming to this conclusion, the majority strayed beyond the matter at hand, which was lesser-included misdemeanor offenses. *Cornell*, 466 Mich at 376 (Kelly, J., dissenting). I noted that, whereas the majority devoted pages of discussion to cognate lesser included offenses, its holding applied to necessarily included felony offenses. Therefore, I disagreed with the majority's analysis in *Cornell* and do not believe it affects the instant case.

20

Accordingly, after considering all the *Robinson* factors, I conclude that *Robideau* should not be overturned.

CONCLUSION

There was no need, other than one springing from the majority's desire to rewrite Michigan double jeopardy jurisprudence, to overturn *Robideau* or determine whether *Robideau* or *Blockburger* is the appropriate test to apply. Rather, the Court of Appeals was correct. There was no evidence in this case that defendant committed the separate offenses of robbery and larceny. His armed robbery convictions violate double jeopardy.

Additionally, because I believe that *Robideau* provides the appropriate protection against multiple punishments in Michigan, I must also dissent from the majority's decision to overturn that decision. Application of the *Robinson* factors supports my position.

I would affirm the Court of Appeals judgment and vacate defendant's two convictions for armed robbery and the two corresponding convictions for felony-firearm, as well as the sentences for those convictions.

Marilyn Kelly

21